# IN THE SUPREME COURT OF IOWA

No. 13–0446

Filed January 2, 2015

**STATE OF IOWA,**

Appellee,

vs.

**CURTIS VANCE HALVERSON,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Des Moines County, Michael J. Schilling, Judge.

Defendant seeks further review of a court of appeals decision affirming his conviction and finding defendant's trial counsel was not ineffective for failing to challenge the sufficiency of the evidence to convict the defendant of possession of contraband at a residential facility. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Thomas A. Hurd of Glazebrook, Moe, Johnston & Hurd LLP, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Tyron Rogers, Assistant County Attorney, for appellee.

**APPEL, Justice.**

In this case, we consider an ineffective-assistance-of-counsel claim in which defense counsel failed to challenge the sufficiency of the evidence to convict the defendant of possession of marijuana at a residential facility under Iowa Code section 719.7(3)(*c*) (2011). In order to commit the charged offense, the defendant must be held in an "institution under the management of the [Iowa] department of corrections [(IDOC)]". *Id.* In this case, the defendant was being held at the Burlington Residential Correctional Facility (residential facility) at the time of the events giving rise to the charge. After receipt of the State's testimony, defense counsel made a motion for directed verdict based on the State's failure to make a prima facie case,[1] but specifically failed to argue the evidence was insufficient to establish that the facility was an institution under the management of the department of corrections. The court denied the motion for directed verdict and the defendant was convicted of the underlying charge.

On appeal, the defendant claims his trial counsel was ineffective for specifically failing to assert there was insufficient evidence to support the charge because the residential facility was not under the management of the department of corrections. The court of appeals affirmed the judgment. We granted further review. For the reasons stated below, we conclude the statutory argument was a claim "worth making" under our caselaw, that counsel was ineffective for failing to assert it, and that had the claim been timely asserted, the defendant would have been acquitted of the underlying charge. As a result, the

---

[1]Defense counsel later recast its motion for directed verdict on this count as a motion for judgment of acquittal, which was overruled.

decision of the court of appeals is vacated, the judgment of the district court is reversed, and the case remanded with instructions to dismiss the charge.

## I. Factual and Procedural Background.

Curtis Halverson was in the custody of the residential facility—commonly referred to as a halfway house—when officials detected the smell of marijuana arising from a room to which he was assigned. Residential officers searched the room and discovered a partially smoked marijuana cigarette. After obtaining other incriminating evidence, Halverson was charged with knowingly possessing marijuana on the grounds of a facility "under the management of the department of corrections" in violation of Iowa Code sections 719.7(1)(*a*), 719.7(3)(*c*), and 719.7(4)(*b*), a class "D" felony.[2]

Halverson pled not guilty and the matter proceeded to jury trial. At trial, the State called three witnesses. The State's witnesses testified that the residential facility was a halfway house in which Halverson was a resident, that the residential facility functioned "under the policies of the Department of Corrections," and that staff received a two-week training course on their job duties "in association with or through the Department of Corrections." After receipt of the testimony, defense counsel made a conclusory motion for a directed verdict, but failed to argue the evidence was insufficient to establish that the residential facility was an institution under the management of the department of corrections.

---

[2]Halverson was also charged with knowingly possessing an incendiary device on the grounds of a facility under the management of the department of corrections in violation of Iowa Code sections 719.7(1)(*b*), 719.7(3)(*c*), and 719.7(4)(*a*). This charge was dismissed when the trial court granted Halverson's motion for judgment of acquittal on this count.

The court instructed the jury that in order to convict the defendant it must find that "The Burlington Residential Correctional Facility is a correctional institution or an institution under the management of the Department of Corrections." The jury convicted Halverson. The court of appeals affirmed the conviction, and we granted further review.

## II.  Standard of Review.

Ineffective-assistance-of-counsel claims are reviewed de novo. *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992). Although at trial Halverson's counsel moved to dismiss the State's case for insufficient evidence, he failed to specifically assert that the State failed to show the residential facility was under the management of the department of corrections. *See* Iowa Code § 719.7(3)(*c*). As a result, the claim was not preserved; however, our ordinary preservation rules do not apply to claims of ineffective assistance of counsel. *See State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). As a result, Halverson may raise his claim for the first time on appeal. *Id.*

In his brief on appeal, Halverson does not specify whether he is proceeding under the Sixth Amendment to the United States Constitution or article I, section 10 of the Iowa Constitution. Where there are parallel provisions in the Federal and State Constitutions and a party does not indicate the specific constitutional basis under which the party is proceeding, we regard both federal and state constitutional claims as preserved. *See King v. State*, 797 N.W.2d 565, 571 (Iowa 2011).

The United States Supreme Court has said that under the Sixth Amendment, in order to show ineffective assistance a defendant must prove by a preponderance of the evidence that the attorney failed to perform an essential duty and to the extent it denied the defendant a fair

trial, prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). Although some state courts have not utilized the *Strickland* test, the defendant does not suggest ineffective-assistance-of-counsel claims should be reviewed under the Iowa Constitution in a fashion different from its federal counterpart. For purposes of this case, we therefore apply the *Strickland* standard. *See King*, 797 N.W.2d at 571 (applying *Strickland* test when counsel did not indicate whether case was being brought under the Iowa or Federal Constitution); *State v. Wilkes*, 756 N.W.2d 838, 842 n.1 (Iowa 2008) (interpreting Iowa and Federal Constitutions identically, and noting no argument was made that the Iowa Constitution should be interpreted differently than the Federal Constitution in search and seizure cases). Even in such cases, however, "we reserve the right to apply the principles differently under the state constitution compared to its federal counterpart." *King*, 797 N.W.2d at 571; *see, e.g., State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009); *Wilkes*, 756 N.W.2d at 842 n.1.

**III. Discussion.**

**A. Introduction.** In this ineffective-assistance-of-counsel case, we begin by considering if the claim would have been meritorious had it been raised by trial counsel. Counsel, of course, does not provide ineffective assistance if the underlying claim is meritless. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). If, however, an underlying claim has merit, we must determine whether the failure to make the claim amounted to a breach of duty and whether the defendant was prejudiced by the breach. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693.

**B. Merits of the Underlying Claim.** In order to answer the question of whether Halverson's trial counsel was ineffective, we first consider whether the unasserted grounds for dismissal would have been meritorious. In order to address this question, we review various provisions of Iowa Code chapters 904 and 905. Iowa Code chapter 904 outlines the powers and responsibilities of the IDOC, while Iowa Code chapter 905 structures the community-based correctional program. *See* Iowa Code chs. 904–05. We then examine other sections of the Code that shed light on the proper meaning of the phrase "under the management of the [IDOC]."

At the outset, Iowa Code section 904.102 lists the institutions in which the IDOC is "responsible for the control, treatment, and rehabilitation of offenders." The list includes nine state institutions, "[r]ehabilitation camps," and "[o]ther institutions related to an institution in subsections 1 through 10 but not attached to the campus of the main institution." *Id.* The residential facility is not specifically named in the list, and there was no evidence offered at trial to suggest that it is an institution related to one of the listed facilities. As we have repeatedly stated, we do not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction. *See, e.g.*, *State v. Tarbox*, 739 N.W.2d 850, 853 (Iowa 2007); *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004); *State v. Wedelstedt*, 213 N.W.2d 652, 656 (Iowa 1973). Though the terms "management" and "control" are not identical, the lack of inclusion of community-based correctional programs like the residential facility in this Code section points in the direction of a conclusion that the residential facility is not managed by the IDOC.

The Iowa Code does, however, provide that the IDOC has certain powers related to community-based corrections programs. The IDOC "has primary responsibility" for the "development, funding, and monitoring of community-based corrections programs." Iowa Code § 7E.5(1)(*n*). The IDOC is also responsible for "[a]ccreditation and funding of community-based corrections programs. . . ." *Id.* § 904.103(1); *id.* § 905.8 (The IDOC "shall provide for the allocation among judicial districts in the state of state funds appropriated for the establishment, operation, support, and evaluation of community-based correctional programs and services."). The IDOC is directed to "provide assistance and support to the respective judicial districts" and to "establish[] guidelines" related to residential treatment centers and community-based correctional programs. *Id.* § 905.7. The director of the IDOC is required to "[e]stablish and maintain a program to oversee . . . community corrections programs and to provide community support to ensure continuity and consistency of programs." *Id.* § 904.108(1)(*c*). These provisions suggest oversight, but not day-to-day management in any operational sense in the activities of institutions such as the residential facility in this case.

In addition, the IDOC has the power under certain circumstances to "assume responsibility for administration of the district's community-based correctional program on an interim basis." *Id.* § 905.9. Such an assumption of responsibility, however, occurs only after the IDOC completes a review of the district community-based correctional program, submits the report in writing to the district board, requests a response for any statutory or guideline violations found in the report (and if a response is not received within sixty days, it may conduct a public hearing on the matter), and determines that the community-based

correctional program will not be expeditiously brought into compliance with applicable statutes and guidelines. *Id.* Plainly, under this provision, the IDOC can assume responsibility for the administration of the community-based correctional program, but this is an extraordinary step reserved for rare occasions of substantial noncompliance by the judicial district with IDOC policies and guidelines.

We now turn to Iowa Code chapter 905 related to community-based correctional programs. A public agency is established for each judicial district, which is directed "to provide a community-based correctional program which meets the needs of that judicial district." *Id.* § 905.2; *see also id.* § 669.2(5) (defining a district department as a state agency under the Iowa Tort Claims Act). The Code establishes a board of directors for each district department. *Id.* § 905.3. Among other duties, the board of each judicial district department is required to "[a]dopt bylaws and rules for the conduct of its own business and for the government of the district department's community-based correctional program." *Id.* § 905.4(1). While the IDOC establishes general policies and guidelines for community-based correctional programs, the judicial district's board of directors establishes the bylaws and rules for day-to-day operation.

The board of directors is further required to employ a director. *Id.* § 905.4(2). The duties of the director of the judicial district department are provided in Iowa Code section 905.6, which provides among other things, that the director "shall . . . [m]anage the district department's community-based correctional program, in accordance with the policies of the district board and the Iowa department of corrections." *Id.* § 905.6(2) (emphasis added). To the extent the term "management" in Iowa Code section 719.7(3)(*c*) might be ambiguous, it is clear the

legislature believed *the director of the judicial department*, and not the IDOC, has the duty to "manage" each community-based correctional program. *See Auen*, 679 N.W.2d at 590 ("Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used.").

There is no question the IDOC establishes policies and guidelines that are applicable to community-based corrections and participates in activities related to the funding of the facilities. The supervision of the community-based correctional programs may be highly regulated by the IDOC, but management of each residential facility is left to the judicial district director unless the IDOC follows the elaborate procedures set out in Iowa Code section 905.9 and "assume[s] responsibility for administration of the district's community-based correctional program on an interim basis."

The conclusion that each district department is responsible for the management of its community-based correctional program is further evidenced by criminal provisions of the Code. For example, Iowa Code section 708.3A(5)(*a*) establishes the crime of assault on correctional staff. In the definition section, "correctional staff" includes "a community-based correctional facility, or an institution under the management of the Iowa department of corrections." *Id.* We assume, of course, the language used in a statute is not redundant. *See State v. Allen*, 708 N.W.2d 361, 366 (Iowa 2006); *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 163 (Iowa 1999) (noting use of disjunctive "or" connotes separate meanings). Thus, the inclusion of the phrase "a community-based correctional facility" is not mere surplusage, but is included in the statute to ensure coverage that would not otherwise result if only the

phrase "institution under the management of the Iowa department of corrections" was utilized.

Similarly, under Iowa Code section 719.4(3), unauthorized absence is a serious misdemeanor for a person who has been committed to "an institution under the control of the Iowa department of corrections, to a community-based correctional facility, or to a jail or correctional institution." While the language is not precisely parallel to our present case, the Code section uses the disjunctive "or" and recognizes a distinction between facilities under the control of the IDOC and a community-based correctional facility. *See id.* And, as our cases have stated, we strive to interpret a statute " 'consistently with other statutes concerning the same or a related subject.' " *State v. Nicoletto*, 845 N.W.2d 421, 427 (Iowa 2014) (quoting *State v. Pickett*, 671 N.W.2d 866, 870 (Iowa 2003)).

Finally, we note the general rule of construction that criminal statutes should be construed narrowly. *See, e.g.*, *State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013) ("[W]e strictly construe criminal statutes and resolve doubts in favor of the accused." (Internal quotation marks omitted.)); *State v. Muhlenbruch*, 728 N.W.2d 212, 216 (Iowa 2007) (same); *Allen*, 708 N.W.2d at 366 (same). To the extent there is an unresolved ambiguity, our cases require a narrow construction of the statute. *See State v. Hearn*, 797 N.W.2d 577, 585 (Iowa 2011).

Based on the above rules of construction and analysis, we conclude the residential facility is not under the management of the department of corrections unless the IDOC takes over the operation of the program pursuant to Iowa Code section 905.9. In this case, however, the State offered no evidence that such a takeover occurred. As a result, if counsel had specifically asserted in his motion of acquittal that there

was insufficient evidence to show the residential facility was under the management of the department of corrections, the defendant would have been entitled to dismissal of the charge.

**C.  Ineffective Assistance.**  We now turn to the question of whether counsel failed to perform an essential duty and whether prejudice resulted.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005).  We think each element is satisfied here under both the State and Federal Constitutions.  First, we conclude counsel failed to perform an essential duty.  Two cases are illustrative.  First, in *Allen*, we found trial counsel ineffective when he allowed a client to plead guilty to a drug-related crime when there was no factual basis for the required element that the facility be a "detention facility."  708 N.W.2d at 363, 369.  Additionally, in *State v. Mitchell*, we noted that a county jail was not a correctional institution for purposes of a criminal statute.  650 N.W.2d 619, 620–21 (Iowa 2002).  As in *Allen* and *Mitchell*, we think a general examination of the relevant Code provisions would have alerted a reasonable attorney to the potential issue.

In sum, the question of whether the residential facility was under the management of the IDOC cannot be dismissed as "not worth making."  *See State v. Graves*, 668 N.W.2d 860, 883 (Iowa 2003).  Once a lawyer undertakes representation, " 'a lawyer is obliged not to omit any essential lawful and ethical step in the defense.' "  *State v. Vance*, 790 N.W.2d 775, 785 (Iowa 2010) (quoting ABA Standards for Criminal Justice: Prosecution Function and Defense Function 4-1.2, cmt., at 123 (3d ed. 1993)).  Reasonable preparation and study would have revealed to trial counsel the potential avenue to dismiss the charge.  *See id.* at 786.  Further, counsel should have known that in order to preserve a

sufficiency-of-the-evidence claim, a specific objection must be lodged to alert the trial court to the nature of the challenge. *See Brubaker*, 805 N.W.2d at 170.

We ordinarily preserve ineffective-assistance-of-counsel claims for postconviction relief proceedings. *State v. Palmer*, 791 N.W.2d 840, 850 (Iowa 2010). In appropriate cases, however, we will consider the merits of ineffective-assistance claims on direct appeal as long as the record is adequate. *Id.*

The record is adequate in this case. The failure of Halverson's trial counsel to preserve the claim cannot be attributed to reasonable tactics or strategy. *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (noting tactical and strategic decisions of counsel must be made only after thorough investigation of the law and facts). The State does not suggest the failure to specify the basis for dismissal was a strategic decision, and we can discern no basis for an argument that the decision not to specifically raise the issue was based on reasonable strategic or tactical considerations. *See id.*; *see also Brubaker*, 805 N.W.2d at 174. Further, we have previously held that claims of ineffective assistance for failure to challenge sufficiency of the evidence may be raised on direct appeal. *See State v. Scalise*, 660 N.W.2d 58, 62 (Iowa 2003) (allowing an ineffective-assistance claim on direct appeal when trial counsel was allegedly ineffective for failing to make clear the specific grounds for his motion for judgment of acquittal).

We also conclude Halverson has been prejudiced by the failure of his counsel to assert the claim. In order to show prejudice under *Strickland*, the defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

Here, had the defense been timely and specifically asserted, the trial court would have had no alternative but to dismiss the charge as pled in the indictment. *See Brubaker*, 805 N.W.2d at 174 (finding trial counsel was ineffective and had trial counsel made the proper objection regarding the sufficiency of evidence, the district court would have dismissed the charge). Although the State contends that hypothetically a district court might have allowed an amendment to conform to proof, the State concedes there is not an alternative under Iowa Code section 719.7(3) that would apply to this case.

### IV. Conclusion.

For the above reasons, we conclude Halverson's trial counsel was ineffective under the State and Federal Constitutions as a result of his failure to assert there was insufficient evidence to show the residential facility was an institution under the management of the department of corrections. Had such a claim been timely asserted, the charge against him would have been dismissed. We therefore conclude the decision of the court of appeals must be vacated, the judgment of the district court reversed, and the case remanded with instructions to dismiss the charge.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Mansfield and Waterman, JJ., who concur specially.

**MANSFIELD, Justice (concurring specially).**

I join the court's opinion except for part II. In part II, I have concerns that the court is laying the groundwork for adopting, sua sponte, a new doctrine of ineffective assistance of counsel under the Iowa Constitution.

I am not joining part II for two reasons. First, our court should only be deciding the case before it, not planting a flag for possible future decisions. Second, I question the practice of changing longstanding constitutional interpretations sua sponte. Rather, changes to our precedent should occur only when we are given a framework, under adversarial briefing, for doing so.

I begin with what the defendant argued in his brief and in his application for further review, quoted verbatim:

> To establish a claim of ineffective assistance of counsel, the Applicant has the burden to prove the following: (1) counsel failed in an essential duty and (2) prejudice resulted therefrom. *Strickland v. Washington*, 466 U.S. 668[, 104 S. Ct. 2052, 80 L. Ed. 2d 674] (1984); *State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999). In proving the first element, the Applicant faces the strong presumption the performance of counsel falls within a wide range of reasonable professional assistance. *State v. Hepperle*, 530 N.W.2d 735, 739 (Iowa 1995). The Court will not second guess reasonable trial strategy. *State v. Wissing*, 528 N.W.2d 561, 564 (Iowa 1995). The second element is satisfied if a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Davis v. State*, 520 N.W.2d 319, 321 (Iowa Ct. App. 1994).

Reading the foregoing, the majority concludes that the defendant "does not specify whether he is proceeding under the Sixth Amendment to the United States Constitution or article I, section 10 of the Iowa Constitution." This statement is accurate so far as it goes. However, the

defendant's first citation is to *Strickland*, which is a very familiar precedent decided only under *the United States* Constitution. 466 U.S. at 684–85, 104 S. Ct. at 2063, 80 L. Ed. 2d at 691–92. I would therefore conclude that the Federal Constitution is the asserted ground for reversal.

The most one can say for the majority's position is that the second of the four Iowa cases cited by the defendant—*Hepperle*—mentions the right to counsel under *both* Constitutions 530 N.W.2d at 739. Therefore, if we do some detective work and read all the defendant's authorities, we can find a reference to the state constitution in one of them. Yet, I do not believe that an appellant can preserve a separate ground for appeal without arguing or mentioning that ground, just because a court decision cited by the appellant refers to that ground. *See Sanchez v. State*, 692 N.W.2d 812, 820 (Iowa 2005) (holding class of undocumented immigrants waived their argument that denial of driver's licenses violated the Iowa Constitution because they "fail[ed] to examine this claim in their brief and fail[ed] to address any specific application of the language of [the state constitution] to this case").

Regardless, the defendant has not urged that the right to counsel under the Iowa Constitution should be interpreted *differently*. To date, we have followed the *Strickland* standard under both the United States and the Iowa Constitutions. *See State v. Clark*, 814 N.W.2d 551, 567 (Iowa 2012) (applying the two-prong *Strickland* test under both Constitutions); *State v. Fountain*, 786 N.W.2d 260, 265–66 (Iowa 2010) (same); *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006) (same); *Collins v. State*, 588 N.W.2d 399, 401–02 (Iowa 1998) (same); *State v. Kinkead*, 570 N.W.2d 97, 103 (Iowa 1997) (same); *Hepperle*, 530 N.W.2d

at 739 (same); *State v. Munz*, 355 N.W.2d 576, 584 (Iowa 1984) (same).[3] We should not retreat from these precedents when no one asks us to do so.

Although the majority refers obliquely to other courts "not utiliz[ing] the *Strickland* test," an important distinction should be made. These jurisdictions had pre-*Strickland* ineffective-assistance standards under their state constitutions that they simply kept after *Strickland* was decided.[4] They did not follow *Strickland* for thirty years and then decide, one day, not to follow it. And certainly, I am aware of no court that has gone its own way without being asked to do so.

If the unnecessary language in part II were omitted, I would not file this special concurrence and would join the court's opinion in its entirety. The balance of the court's opinion is very well-reasoned, and I agree with it.

Waterman, J., joins this special concurrence.

---

[3]I have previously said that I believe our court's view of what amounts to a failure to perform an essential duty under *Strickland* is "expansive." *See Rhoades v. State*, 848 N.W.2d 22, 33–34 (2014) (Mansfield, J., concurring specially). But we have taken this expansive view while applying *Strickland*; we have never suggested that we are taking a different approach to ineffective assistance of counsel under the Iowa Constitution.

[4]*See Wilson v. State*, 711 P.2d 547, 549 (Alaska Ct. App. 1985) (retaining the standard set forth in *Risher v. State*, 523 P.2d 421, 425 (Alaska 1974)); *State v. Smith*, 712 P.2d 496, 500 n.7 (Haw. 1986) ("The test for measuring ineffectiveness adopted by this court in *State v. Antone*, [615 P.2d 101, 104 (Haw. 1980),] is not that declared by the Supreme Court in *Strickland* . . . . But for purposes of judging claims of inadequate representation brought under article I, section 14 of the Hawaii Constitution, we shall continue to apply the standard enunciated in . . . *Antone*."); *People v. Claudio*, 629 N.E.2d 384, 385–86 (N.Y. 1993) (explaining how, prior to *Strickland*, the New York courts had developed "a somewhat different test for ineffective assistance of counsel under article I, § 6 of the New York Constitution" and applying that test); *Stevens v. State*, 902 P.2d 1137, 1141–42 (Or. 1995) (en banc) (clarifying that the pre-*Strickland* state constitutional standard from *Krummacher v. Gierloff*, 627 P.2d 458, 468 (Or. 1981) (en banc), still applied after *Strickland*).