# IN THE COURT OF APPEALS OF IOWA

No. 14-1978
Filed February 10, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**FREDIZ LIONEL PACHECO,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Ida County, Jeffrey L. Poulson, Judge.

A defendant appeals from his conviction and sentence for attempted burglary in the second degree. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Benjamin Parrott, Assistant Attorneys General.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

The State charged Frediz Lionel Pacheco with burglary in the second degree and assault with intent to commit sexual abuse, but the jury returned a guilty verdict on the lesser offense of attempted burglary and acquitted him on the assault charge. On appeal, Pacheco ventures he may have been acquitted outright if his trial counsel had objected to a misstatement of law in the prosecutor's closing argument. Because counsel's omission undermines our confidence in the verdict, we reverse and remand for a new trial.[1]

## I.     Background Facts and Proceedings

The burglary and assault charges stemmed from Pacheco's late-night encounter with M.H. in November 2013. Pacheco knocked on the door of M.H.'s apartment around midnight. The peephole was broken so she opened the door three or four inches to see who was there. She did not recognize Pacheco, who was asking for her upstairs neighbor. According to her testimony, Pacheco started to ask her questions: Was she married? Did she have children? Did she drive a blue car? M.H. was spooked and wanted Pacheco to leave. She told him it was late, and she needed to go to bed. As she tried to shut the door, she recalled he reached his hands across the threshold and "forcefully" grabbed her face, kissing her cheeks and neck. She testified she told him to stop, but he then touched her breasts under her shirt and her "crotch" over her pants. To end the encounter, M.H. told Pacheco he could call her the next day; she gave him her

---

[1] Pacheco also raises two issues concerning his sentence. Because we reverse his conviction, we need not reach those sentencing issues.

phone number, though she transposed two of the digits. After he left, she called 911.

Pacheco told the jury he knocked on the door of the wrong apartment looking for his girlfriend. Pacheco said M.H. did not appear to be angry or nervous. He denied reaching inside the apartment to touch her face or body.

The Ida County Attorney presented the jury with a two-count trial information, alleging Pacheco committed burglary in the second degree, in violation of Iowa Code section 713.5(1)(b) (2013), and assault with intent to commit sexual abuse, in violation of Iowa Code sections 708.1(1) and 709.11. After hearing the evidence, the jury returned a single guilty verdict on the offense of attempted burglary in the second degree, in violation of Iowa Code section 713.6. Pacheco challenges that verdict on appeal.

## II.    Standard of Review

We often preserve ineffective-assistance claims for possible postconviction-relief proceedings so defense counsel can explain his or her actions. *See State v. Halverson*, 857 N.W.2d 632, 638 (Iowa 2015). But we resolve them on direct appeal if the record is adequate. *Id.* In this case, both parties agree preservation is not necessary. Finding the record adequate, we review Pacheco's constitutional claim de novo. *See id.* at 634.

## III.    Ineffective-Assistance-of-Counsel Analysis

Pacheco alleges his trial counsel was constitutionally remiss in not objecting to the prosecutor's misstatement of the law during closing argument.

He highlights the following passage from the closing argument where the prosecutor is explaining the intent elements necessary to prove burglary.

Now, Element No. 4 of the instruction is particularly interesting because it involves both general and specific intent. The general and specific intent are defined in Instructions 15 and 16. General intent means that to commit a crime, a person must intend to do an act which is against the law. While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware he was doing the act and did not do it voluntarily — or did it — excuse me — did it voluntary, not by mistake or accident.

Assault is a general intent crime. *That means that if you find the defendant intended to reach out and touch [M.H.], intended to reach out and grab her face, or intended to reach underneath her shirt and that contact was insulting or offensive to [M.H.], he's guilty of assault, even if he himself did not intend that contact to be insulting or offensive.*

Clearly he touched her. He reached his hands out and grabbed her. He reached his hands underneath her shirt. He moved them down her body. All of those touches were insulting or offensive to [M.H.], and all of those were assaults to her by the defendant. This element though, the No. 4 Element on Instruction 19, requires that we prove that the defendant had the specific intent to assault [M.H.] when he entered her apartment.

Specific intent, as differing from general intent, means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

*[Proving] general and specific intent for this element means that the State must show that when the defendant entered [M.H.]'s apartment, he had the specific intent to make contact with her.* This element is met by the sheer fact defendant reached in to grab her face to kiss her. He did not reach into her apartment by mistake or accident. He reached in to grab her, to kiss her, and to touch her.

Pacheco contends the italicized sentences inaccurately portray the intent element of assault, and in turn, the intent element of burglary and attempted burglary. In support of his contention, Pacheco points to precedent from our supreme court defining the intent element of assault. *See, e.g.*, *State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010) ("Because the elements of these

assault alternatives include an act that is done to achieve the additional consequence of causing the victim pain, injury or offensive physical contact, the crime includes a specific intent component."); *Wyatt v. Iowa Dep't. Human Serv.*, 744 N.W.2d 89, 94 (Iowa 2008) ("[T]he State must demonstrate not only that the defendant intended to make physical contact, but that the defendant intended that physical contact to be insulting or offensive.").

In analyzing Pacheco's allegation concerning his attorney's performance, we apply a two-pronged test, asking if counsel breached an essential duty and if prejudice resulted from any such breach. *See Halverson*, 857 N.W.2d at 635 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish a breach, Pacheco must show "counsel's representation fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688. We are highly deferential in scrutinizing counsel's performance and indulge "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, Pacheco must show a reasonable probability that but for counsel's unprofessional error, "the result of the proceeding would have been different." *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

We turn first to the performance prong. Because counsel has no duty to push a position lacking in merit, we first examine whether an objection to the trial prosecutor's closing argument would have been meritorious. *See Halverson*, 857 N.W.2d at 635 ("Counsel, of course, does not provide ineffective assistance if the underlying claim is meritless."). On appeal, the State does not defend the

accuracy of the trial prosecutor's closing argument. Instead, the State argues defense counsel did not breach a duty because he could presume the jury relied on the court's instructions. We are not convinced the marshalling and definitional instructions inoculated the jurors against the inaccuracies in the prosecutor's argument.

As Pacheco argues on appeal: "While the jury is presumed to follow the jury instructions, the relevant jury instructions in this case were not worded in a way that could dispel the confusion created by the State's misstatement of the law." The jury found Pacheco guilty of attempted burglary, which required proof he possessed the intent to commit an assault when he tried to enter M.H.'s apartment. The court instructed the jury that Pacheco must have done "an act which was intended to result in physical contact to [M.H.] which was insulting or offensive." That instruction was subject to two interpretations: *either* defendant intended the contact to be insulting or offensive *or* defendant intended contact and the victim found the contact to be insulting or offensive. Given the ambiguity in the instruction, the prosecutor's misstatement of the law required an objection. *See State v. Clay*, 824 N.W.2d 488, 497 (Iowa 2012) (finding defense counsel breached a duty in not objecting to inaccurate statement of law in prosecutor's closing argument because jury's "only source of information as to whether theft, an element of burglary, requires temporary or permanent intent to deprive was the prosecutor's statement in his rebuttal closing argument").

Once defense counsel undertakes representation, he or she "is obliged not to omit any essential lawful and ethical step in the defense." *State v. Vance*,

790 N.W.2d 775, 785 (Iowa 2010).  In this case, trial counsel omitted the essential step of objecting to the prosecutor's misstatement of the law. Competent counsel would have lodged an objection to the prosecutor's closing argument; we find no strategic reason to refrain from doing so.  *See Clay*, 824 N.W.2d at 498.

We turn next to the question of prejudice.  Pacheco contends "there is a reasonable probability that, had [his] attorney objected to the State's misstatement of the law, the result of the proceeding would have been different." He points out the jury instruction defining assault reinforced the prosecutor's misstatement by adding the sentence "Assault is a general intent crime" in deviation from the uniform instruction.  He further argues the evidence against Pacheco was not overwhelming, as the jury—in acquitting him of the greater offense of burglary and of assault with intent to commit sexual abuse— apparently disbelieved M.H.'s testimony that Pacheco entered her apartment. Pacheco argues: "Because the jury had been misinformed that an assault only required contact, not contact intended to be offensive, the jury could have convicted Pacheco just because he wanted to kiss [M.H.], even if he hoped and expected the kiss to be welcomed by her."

We are persuaded by Pacheco's contention that he was prejudiced by counsel's failure to object.  Without any objection, the jurors were left with the misimpression that the State satisfied its burden by showing only that Pacheco attempted to enter the apartment with the specific intent to have physical contact with M.H., no matter how innocuous he considered the contact to be.  Trial

counsel's conduct in not challenging the prosecutor's misstatement of the intent element of assault is sufficient to undermine our confidence in the verdict. *See Strickland*, 466 U.S. at 696 (explaining "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged"). We reverse the conviction for attempted burglary in the second degree and remand for a new trial.

**REVERSED AND REMANDED.**