# IN THE COURT OF APPEALS OF IOWA

No. 15-0022
Filed August 17, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ORLANDIS FRED MURRIEL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

A defendant challenges his counsel's performance regarding his guilty plea and sentencing and the district court's denial of his motion in arrest of judgment. **AFFIRMED.**

Taryn R. Purcell of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Linda Hines, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

Orlandis Murriel admitted fighting with his girlfriend in the front seat of her car and shattering the driver's side window while three children sat in the backseat. The State charged him with seven criminal offenses; he pleaded guilty to five counts. On appeal, he claims his trial counsel was ineffective in waiting until the "eleventh hour" to inform him of the maximum punishment he faced from the plea agreement and by not objecting to continuances of his sentencing hearing. Murriel also alleges the court erred in denying his motion in arrest of judgment.

Because counsel adequately informed Murriel of the maximum possible punishment and because Murriel was not prejudiced by the continuances, he fails to show counsel was ineffective. Further, the district court did not abuse its discretion in denying Murriel's motion in arrest of judgment. Accordingly, we affirm his convictions.

## I.     Facts and Prior Proceedings

In June 2014, Murriel was driving Angela Baker's car; Baker was sitting in the front passenger seat. Baker and Murriel have two children in common, then ages four and eighteen months, who were backseat passengers. Baker's eleven-year-old daughter, M.H., also was in the backseat.

Murriel and Baker started arguing. Baker and M.H. told officers Murriel hit Baker in the head and pulled her hair while he was driving. When Baker hit back, Murriel pulled the car over and kicked Baker in the stomach, forcing her out of the passenger door. When Baker started to yell for help, Murriel took a padlock from inside the car and broke the driver's side window, scattering glass

fragments into the backseat near the two younger children. By this time, M.H. had left the vehicle to knock on the front door of a nearby residence, asking for help. After he broke the window, Murriel stepped away; Baker and M.H. re-entered the car, drove away, and reported the incident. When confronted by officers, Murriel denied assaulting Baker and denied breaking the window. The cost to repair the window was $300.

The State charged Murriel with seven counts—three counts of child endangerment (knowingly creating a substantial risk to the three children by physically assaulting Baker while driving—aggravated misdemeanors), one count of fourth-degree criminal mischief (breaking the window—serious misdemeanor), two counts of neglect of a dependent person (shattering the glass into the back seat—class "C" felonies), and one count of domestic abuse assault, enhanced (striking and kicking Baker—class "D" felony).

Murriel met with his trial counsel on the morning of the September 2, 2014 plea hearing, and counsel told Murriel he was facing up to seventeen years in prison under the State's plea offer. Murriel signed a memorandum in which he agreed to join in the State's recommendation for "sixteen years prison, suspended, length of probation to be determined by the court." The parties' negotiations did not bind the district court.

When the plea hearing commenced around 4:00 p.m., the court read the terms of the parties' plea agreement into the record, stating Murriel would enter a plea of guilty to five counts and the State would dismiss one count of neglect of a dependent person (class "C" felony—ten years), one count of domestic abuse simple assault, enhanced (class "D" felony—five years), and three related

misdemeanor charges and citations.[1] The court discussed the length of the sentence contemplated by the parties' negotiations, explaining:

> The plea agreement also calls for suspended prison sentences, [placement on formal probation]. It looks like count I, two years [child endangerment]; count II, one year [criminal mischief]; count III, two years [child endangerment]; Count IV, two years [child endangerment]; and count V, ten years [neglect of a dependent person]. And then it says a total of sixteen years suspended. So . . . those would be consecutive except for count II . . . criminal mischief.

Defense counsel and Murriel both agreed with the court's explanation.

Murriel then told the court he intended to enter a plea of guilty, that no one had made any promises to him "other than the plea bargain," and he had no other pending charges. Murriel also assured the court (1) he had "a chance to read through those charges," (2) he "had enough time to discuss those charges" with his attorney, and (3) he was "satisfied" with defense counsel's services. The court continued by separately detailing the sentences and fines on each of the five plea counts, concluding: "If all five of those counts ran consecutive to each other, you'd be looking at a maximum of seventeen years in prison. Do you understand that?" Murriel said he understood.

After the court listed the rights Murriel would give up by pleading guilty, Murriel provided a factual basis for each count and pleaded guilty. The court accepted his plea, specifically finding: "I do find that [Murriel] has knowingly and voluntarily entered his plea, that he fully understands his rights, and that there is a factual basis for the plea."

---

[1] Those charges were trespass, violation of a no-contact order, and operating without a driver's license.

The court ordered a presentence investigation (PSI) report and set sentencing for October 20, 2014. On October 8, the Iowa Department of Correctional Services (DCS) asked the court for an extension to finish Murriel's PSI because Murriel had not completed "his packet in a timely manner."

Meanwhile, on September 3, the day after the plea hearing, Murriel was released on bond. Five days after his release, officers arrested and charged Murriel with possession of cocaine with intent to deliver.

On September 22, Murriel filed a motion in arrest of judgment in the child-endangerment case, claiming his plea "was not knowingly and voluntarily entered into." The court conducted a hearing on Murriel's motion in arrest of judgment on October 13. The State argued the motion "was made purely because Mr. Murriel, six days after entering his guilty plea, was charged with a new [crime] and that's the basis." The court took the matter under advisement, stating: "I'm not inclined to grant this motion if I feel that the basis for his motion is simply that he went out and got into new trouble."

On October 16, the court denied Murriel's motion, finding no defects in the plea proceeding. The court also granted the DCS's request for additional time and reset sentencing for November 3. On November 3 and November 17, 2014, the court again continued the sentencing hearing.

Also on November 17, Murriel entered a plea of guilty in the felony drug case. In exchange, the State agreed to recommend an indeterminate, ten-year

term, suspended,[2] to be served concurrently with the sentences in the child-endangerment case. As in the child-endangerment case, the parties' negotiations were not binding on the court.

The court continued the child-endangerment sentencing hearing again on November 24 and November 26. The November 26 order stated the court had been informed the updated PSI on the felony drug charge could not be prepared in time. The court set sentencing for December 8. That day, the court continued sentencing until December 29, 2014, and increased the length of time for the hearing. At no point did Murriel object to the continuances.

The PSI for the endangerment case noted Murriel was "no stranger to committing acts of violence toward others"; "he was convicted of a carjacking, resulting in a long period of incarceration" at age fifteen. The PSI recommended ten years in prison, stating:

> The defendant has also been convicted of domestic abuse assault twice previously and child endangerment previously as well. He was granted the privilege of probation in these offenses, and violated the terms of that probation, ultimately resulting in his probation being revoked. Now the defendant has pled guilty to another violent offense, as well as offenses [that] affected minor children. Since his arrest . . . [he] has been charged with four new offenses, including violation of a no-contact order. The defendant did not comply with the conditions of pre-trial supervision.

Additionally, the report noted Murriel "blamed his victim, taking virtually no responsibility for his role in the incident."[3] Finally, the PSI concluded: "[T]here is

---

[2] The plea agreement does not specifically provide the State would recommend a suspended sentence, but at the December 29 sentencing hearing the State, Murriel, and the court agreed that those were the terms.

[3] Murriel wrote, "my girlfriend was assaulting me while I was driving and I was arrested." During the interview, Murriel stated: "I should be getting two years . . . she should be in jail."

little reason to believe the defendant is ready to change his behavior and be successful on probation supervision." The PSI on the felony drug charge recommended ten years in prison run consecutive to the endangerment ten years, for a total of twenty years in prison.

On December 29, 2014, Murriel appeared for sentencing. In the child-endangerment case, the court rejected the State's recommendation for a suspended sentence, explaining:

> [Murriel] pled to five separate counts, one of those being a "C" felony, and [he] was informed at the plea proceeding that if those five counts ran consecutive to each other, he could be looking at a maximum of seventeen years in prison. He knew that. He was told that the plea bargain is not binding on the sentencing judge, that the sentencing judge can do anything different from his plea bargain all the way up to seventeen years in prison. Knowing that and knowing that he had sentencing pending, he got out of jail and within five days he was arrested . . . and charged with possession of cocaine with the intent to deliver . . . , all while he's facing sentencing on a maximum of seventeen years in prison.

The court noted Murriel was told at the drug plea proceeding that he was facing a maximum of twenty-six years in prison. The court reasoned:

> And the plea bargain is to let him walk away, suspended sentences with no punishment and, in particular, the possession of cocaine with intent to deliver . . . would run concurrent. In other words, no punishment at all, not even consecutive [sentences] . . . . I don't know how we can . . . especially suspend them and run them concurrent. I just don't think that's appropriate . . . . [I]t took five days getting out of jail to be picked up on a new "C" felony . . . we can't just sweep it under the rug and call it no punishment, call it a suspended sentence, I'm not willing to do that.

In the endangerment case, the court ordered Murriel to serve an indeterminate ten-year term for neglect of a dependent person, indeterminate two-year terms on each of the three counts of child endangerment, and an indeterminate one-year term for criminal mischief. The court ordered the one-

year term and the three, two-year terms to run concurrently, resulting in an overall ten-year prison term in the endangerment case. Next, the court sentenced Murriel to an indeterminate ten-year term on the felony drug charge. The court stated: "The PSI recommends it consecutive. I'll run it concurrent."

Murriel now appeals.

## II. Ineffective Assistance of Counsel

Because Murriel claims his guilty plea resulted from counsel's ineffective assistance—a constitutional challenge—our review is de novo. *See State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011). Generally, we prefer to preserve ineffective-assistance claims for postconviction-relief proceedings. But if the record is sufficient, we may resolve such claims on direct appeal. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). We find the record sufficient here.

To be successful Murriel must show: (1) his counsel failed to perform an essential duty; and (2) this failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015). The first prong requires proof counsel did not act as a "reasonably competent practitioner" would have acted. *State v. Simmons*, 714 N.W.2d 264, 276 (Iowa 2006) (recognizing courts presume counsel "performed his duty in a competent manner"). In the guilty plea context, the prejudice prong requires Murriel to prove a reasonable probability that, but for trial counsel's unprofessional errors, he would not have pleaded guilty and instead would have insisted on going to trial. *See State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). Murriel must prove both elements by a preponderance of the evidence to prevail;

we may affirm on appeal if either element is lacking. *See Strickland*, 466 U.S. at 687.

    **A. Maximum Sentence.** Murriel claims defense counsel rendered ineffective assistance by telling Murriel for the first time in a meeting conducted on the morning of the plea hearing—the "eleventh hour"—that he faced up to seventeen years in prison under the plea agreement. Murriel admits the district court informed him at the plea hearing—and confirmed he understood—he could face a maximum penalty of seventeen years in prison. Nevertheless, he argues his plea was unknowing, unintelligent, and involuntary because he did not have an "adequate opportunity to weigh the risks of entering a guilty plea" given the short turnaround between counsel's pre-plea advisory and the hearing.

    Murriel fails to show counsel breached an essential duty. Murriel admits counsel told him *before* the plea hearing he was facing up to seventeen years in prison by pleading guilty. *See Parsons v. Brewer*, 202 N.W.2d 49, 54 (Iowa 1972) (stating *effective* assistance of counsel "denotes conscientious, meaningful legal representation wherein the accused is advised of his rights"). At the plea hearing, Murriel told the court he had read and understood all the charges, he had "enough time" for discussion with his attorney, and he was satisfied with counsel's services. *See Stouffer v. State*, No. 12-0932, 2013 WL 5498060, at *5-6 (Iowa Ct. App. Oct. 2, 2013) (finding no breach of duty where defendant's colloquy showed counsel discussed the matter at issue with defendant); *Brown v. State*, No. 10-0134, 2010 WL 5394754, at *1 (Iowa Ct. App. Dec. 22, 2010) (concluding "counsel did not breach an essential duty by supposedly refusing to confer with [defendant] in jail" regarding the State's plea offer). Murriel cites no

cases holding trial counsel breached an essential duty by informing a defendant shortly before the plea hearing of the maximum sentencing consequences of the plea. Even if more time to contemplate the consequences would have been advantageous for Murriel, an accused is not entitled to "perfect representation," but only to "representation which is within the normal range of competency." *See State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Murriel's attorney performed within the normal range of competency.

**B. Continuances of Sentencing Hearing.** Murriel next claims trial counsel was ineffective in failing to object to several postponements of the sentencing hearing. Murriel's appellate challenge rests upon a tower of suppositions. He contends, if counsel had "objected to the multiple continuances, [then he] would have had the benefit of the original plea bargain . . . a suspended sentence" because he would not have been sentenced on both the child endangerment and the drug matters simultaneously.[4]

We resolve this issue on *Strickland's* prejudice prong. Murriel fails to show a reasonable probability that had counsel objected, the court would not have repeatedly continued the hearing and Murriel would have received a more favorable sentencing outcome on the child-endangerment case.

Murriel's argument ignores two key facts relevant to the sentencing on child endangerment: (1) he contributed to the delay by failing to timely prepare

---

[4] Murriel also contends the State "withdrew from its original plea offer and instead made a new plea offer which was provided to the court on November 18." This contention is inaccurate. The parties' plea agreement on the drug offense did not supersede their agreement in the child-endangerment case. At the joint sentencing hearing on December 29, the State followed both plea agreements in making its recommendations.

materials requested for the PSI; and (2) he committed another felony only five days after his release, knowing the court was not bound by the parties' plea negotiations on the sentencing for child endangerment. The court had access to information concerning Murriel's arrest for a drug felony—in violation of the terms of his release—even before October 20, the first date set for sentencing on the child-endangerment plea. Given this timing, Murriel cannot show he would have received a more lenient punishment even if counsel had objected to continuing the sentencing hearing. In addition, the sentencing court's reasons for not suspending the terms in the child-endangerment case would have been the same regardless of whether the hearing was held on the original date or continued to coincide with sentencing on the felony drug charge. Under these circumstances, Murriel is unable to prove he was prejudiced by counsel's performance.

## III.    Motion in Arrest of Judgment

Murriel's motion in arrest of judgment claimed his guilty plea was not knowing and voluntary. We review his challenge to the denial of his motion for an abuse of discretion. *See State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008). We will find an abuse of discretion only if the district court exercised its discretion on clearly untenable or unreasonable grounds. *Id*. As the district court determined, the record reveals no defects in Murriel's plea proceeding. Therefore, the court did not abuse its discretion in denying the motion in arrest of judgment.

**AFFIRMED.**