# IN THE COURT OF APPEALS OF IOWA

No. 23-0500
Filed June 19, 2024

**BRANDY RENEE BYRD,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Linn County, Christopher L. Bruns, Judge.

A defendant appeals the dismissal of an application for postconviction relief. **AFFIRMED.**

Thomas M. McIntee, Williamsburg, for appellant.

Brenna Bird, Attorney General, and Aaron Rogers, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., Buller, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**GAMBLE, Senior Judge.**

Brandy Byrd appeals the dismissal of her third application for postconviction relief (PCR). This court has previously explained the underlying offense as follows:

> On January 6, 2002, Brandy Byrd and D.J. Keegan brutally robbed and murdered Greg Wells, a Pizza Hut delivery driver, in Marion, Iowa. According to the State's evidence, Keegan lured Greg into the apartment while Byrd hid in a closet. Byrd then attacked Greg and repeatedly hit him in the head with a hammer. Thereafter, Keegan used a knife to cut Greg's throat. The combination of these injuries caused Greg's death.

*State v. Byrd*, No. 03-1578, 2004 WL 2387048, at *1 (Iowa Ct. App. Oct. 27, 2004). At the time of the crime, Byrd was twenty years old; Keegan was a juvenile. Byrd was convicted of murder in the first degree and robbery in the first degree. She was sentenced to the statutorily mandated life in prison without the possibility of parole for the murder and a concurrent term of twenty-five years in prison with a seventy percent mandatory minimum for the robbery. This court affirmed the conviction on appeal. *Id.* This court also denied Byrd's first two PCR claims. *See Byrd v. State*, No. 08-1930, 2012 WL 836391, at *2 (Iowa Ct. App. Mar. 14, 2012); *Byrd v. State*, No. 16-1575, 2018 WL 347715, at *2–3 (Iowa Ct. App. Jan. 10, 2018). It also appears she filed a federal habeas claim that was denied.

In 2019, Byrd filed a third application for PCR. Although originally framed as ineffective assistance, Byrd substantively asserted a claim of illegal sentence because "her sentence of life without parole is constitutionally impermissible and therefore invalid." After the supreme court filed *Dorsey v. State*, 975 N.W.2d 356, 363–64 (Iowa 2022), Byrd recast her application to include a claim her sentence was grossly disproportionate. The PCR court found Byrd's claims

were without merit and her sentence was not cruel and unusual under the Iowa Constitution. The court dismissed the application.

On appeal, Byrd argues that her mandatory sentence of life without parole is cruel and unusual punishment given she was twenty years old at the time of the offense and that her sentence violates the gross-disproportionality test explained in *Dorsey*, 975 N.W.2d at 363–64. Byrd also makes a passing claim her PCR counsel was ineffective by failing to sufficiently argue or present evidence to support her claims. The State correctly observes Byrd's claims should have been raised in a motion to correct illegal sentence in the underlying felony case, not in an application for PCR. But, as in *Dorsey*, "[w]e treat [her] 'notice of appeal and accompanying briefs as a petition for writ of certiorari, as we conclude that appeals from a motion to correct an illegal sentence are most appropriately fashioned in this manner. We grant the petition for writ of certiorari.'" 975 N.W.2d at 360.

In *Dorsey*, the postconviction applicant sought to apply recent jurisprudence doing away with mandatory minimums and life-without-parole sentences for juvenile offenders to other young adult offenders over the age of eighteen. *Id.* at 361. The court flatly rejected his challenge, noting and reaffirming the clear, bright-line distinction between juvenile and adult offenders for sentencing. *Id.* at 362–63 (examining the reasons underlying the distinction and collecting cases rejecting the same argument as Byrd suggests). So long as our supreme court continues to recognize a bright line for purposes of sentencing offenders at age eighteen, so will we. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent."). Thus, we reject Byrd's first claim.

The grossly-disproportionate test, which was rearticulated in *Dorsey*, has three parts: (1) balance the "gravity of the crime against the severity of the sentence"; (2) compare the sentence to sentences for other crimes in our jurisdiction; and (3) compare to "the sentences for similar crimes in other jurisdictions." *Dorsey*, 975 N.W.2d at 364 (citations omitted). If we find no inference of gross disproportionality, our inquiry ends. *State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018).

Byrd concentrates on the first factor, asserting it was the actions of Keegan slitting the driver's throat, rather than her hitting the driver in the head with a hammer several times that killed the driver. Because Keegan was the immediate cause of death, and he was sentenced to life with the possibility of parole because he was a juvenile,[1] Byrd asserts she "has clearly satisfied the three part gross disproportionality test." She does not address the second or third elements at all, instead digressing into another analysis of juvenile sentencing and Justice Appel's dissent in *Dorsey* (including large, unattributed block quotes).

"As a general matter, the sentence of life imprisonment without the possibility of parole for the crime of murder in the first degree does not raise an inference of gross disproportionality." *Dorsey*, 975 N.W.2d at 364. "[W]e owe substantial deference to the penalties the legislature has established for various crimes." *Id.* (citation omitted). "[I]t is rare that a sentence will be so grossly

---

[1] Keegan was originally sentenced to life without parole, but in 2016 he was resentenced to life with the possibility of parole based on intervening case law on juvenile sentencing.

disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." *Id.* (citation omitted).

During the initial investigation of the driver's death, Byrd admitted to police that she and Keegan came up with a plan to steal a delivery driver's car to use to leave town. After Keegan called for a pizza delivery, she hid in the closet to wait for the delivery driver, then hit him in the head with a hammer, then threw the hammer back in the closet, where police later found it. The driver had "multiple blows to his head, several of which . . . injur[ed] the brain and caus[ed] bleeding around the brain, and those [were] fatal injuries." The forensic pathologist testified that with only the head injuries, the driver would only have lived "a few minutes, maybe even an hour" without immediate, significant emergency medical treatment. The "multiple blunt-force injuries" were listed as a cause of death. Given the evidence of premeditation and multiple fatal blows delivered by Byrd on an innocent victim, "there is nothing unique about the facts of this case that raise an inference of gross disproportionality." *Id.* The facts here do not pass the threshold analysis balancing the gravity of the crime against the severity of the sentence. *See id.* Byrd has not established her sentence is grossly disproportionate to her crime.

Byrd mentions, but does not factually or legally develop, assertions PCR counsel provided ineffective assistance.[2] We have recognized a "narrow

---

[2] Because no claim of ineffective assistance was raised in Byrd's amended and recast petition, nor ruled on by the district court, we will only consider the claim as it relates to trial counsel in this PCR action. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

exception" to reach the merits of ineffective-assistance-of-PCR-counsel claims on appeal if the record is sufficiently developed. *Miller v. State*, No. 23-1457, 2024 WL 1757181, at *3 (Iowa Ct. App. Apr. 24, 2024) (citing *Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018)); *see also DeBeir v. State*, No. 18-1654, 2019 WL 3317342, at *1 n.1 (Iowa Ct. App. July 24, 2019) (noting the Iowa Code section 814.7 prohibition of ineffective-assistance claims on direct appeal in *criminal* trials would not impact PCR trials, which are civil proceedings).

Both Byrd's claims were foreclosed by controlling supreme court precedent, and counsel was not ineffective for not introducing evidence that has already been rejected by the supreme court. "Counsel . . . does not provide ineffective assistance if the underlying claim is meritless." *State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015). We find Byrd's PCR counsel was not ineffective.

**AFFIRMED.**