**IN THE COURT OF APPEALS OF IOWA**

No. 17-0563
Filed June 6, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MAURICE MONTRAIL HAYES,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.


Maurice Hayes appeals his convictions after a jury found him guilty of attempted murder, first-degree robbery, and assault causing bodily injury. **AFFIRMED.**


Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli Huser, Assistant Attorney General, for appellee.


Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Maurice Hayes appeals his convictions after a jury found him guilty of attempted murder, first-degree robbery, and assault causing bodily injury. He challenges the sufficiency of the evidence supporting his conviction and the admission of certain evidence. He also alleges he received ineffective assistance of trial counsel.

**I. Background Facts and Proceedings.**

William Butcher was making repairs to his car outside an apartment building in the early morning hours of May 12, 2016, in order to arrive at work by 5:30 a.m. Sometime after 3:00 a.m., he was approached by a man who asked if he had a cigarette. After Butcher gave the man a cigarette, the man asked if Butcher could make change for a $20 bill. When Butcher took out his wallet, the man came running at him with a gun, and the two scuffled before Butcher ran into the apartment where his girlfriend, Kay Oertwig, was staying. Butcher told Oertwig and her mother that someone had just tried to rob him. When they looked out an apartment window, the man was digging around in Butcher's car. Oertwig ran out of the apartment to confront the man, chasing after him as he walked away. The man stopped walking and turned around to face her, and Oertwig got close enough to make eye contact with him, although his face was covered up to his nose. The man ripped away a silver chain that Oertwig was wearing before striking her in the head with the gun. Butcher, who had run after Oertwig, was charging at the man when the man shot him twice.

While Butcher was in the hospital recovering from surgery, he was presented with a photographic array that included a photograph of Hayes. In the

photograph, Hayes's hairstyle was different from the way it appeared in May 2016. Butcher was unable to identify any of the men depicted as the man who shot him.

During the police investigation, Des Moines Police Detective Danny White obtained surveillance video footage taken at the apartment complex at the time of the shooting. The footage showed Shayla Shade dropping her cousin off at a different building in Oertwig's apartment complex at 3:22 a.m. Shortly after Shade's cousin and the cousin's boyfriend exited Shade's vehicle and went inside the apartment building, a person who Shade identified as Hayes exited the front passenger seat of Shade's vehicle. As Shade drove away, the person identified as Hayes walked north, in the direction of Oertwig's apartment building and Butcher's car. Thereafter, the footage is consistent with the accounts provided by Butcher and Oertwig; it shows two figures "moving around a little bit" for ten minutes before one of the figures—later seen to be Butcher—is shown running from a vehicle and into the apartment building, while the other figure chases him before returning to the vehicle. The footage then shows Oertwig confronting the figure, the figure assaulting Oertwig, and Butcher being shot. Finally, the footage shows the figure walking out of the camera's frame.

Detective White also obtained surveillance video footage from Shade's apartment complex, which was not far from Oertwig's apartment complex. The surveillance footage shows a figure—who appears to be the same individual depicted in the video footage from Oertwig's apartment—running through a grassy area and parking lot before entering Shade's apartment building. Surveillance video taken from inside Shade's apartment building shows that the individual walking away from Shade's apartment is carrying what appears to be a black

hooded sweatshirt when he enters a laundry room for a moment. He then leaves the laundry room without the sweatshirt.

A warrant was issued for Hayes's arrest in connection with the events of May 12. On June 26, 2016, an off-duty police officer spotted Hayes and arrested him. During an interview at the police station, Hayes claimed he was out of town on May 12.

At trial, both Oertwig and Butcher identified Hayes as the assailant. The surveillance video footage was presented to the jury, as was the first three-and-one-half minutes of Hayes's June 2016 interview at the police station. After deliberating, the jury returned its verdict, finding Hayes guilty of attempted murder, first-degree robbery, and assault causing bodily injury.

**II. Sufficiency of the Evidence.**

Hayes first contends there is insufficient evidence to support his convictions. We review challenges to the sufficiency of the evidence to support a conviction for correction of errors at law. *See State v. Kelso-Christy*, ___ N.W.2d ___, ___, 2018 WL 2070572, at *2 (Iowa 2018). In doing so, we view the evidence in the light most favorable to the State. *See id.* The question is whether substantial evidence supports the finding of guilt. *See id.* Evidence is substantial if it would convince a rational factfinder that the defendant is guilty beyond a reasonable doubt. *See id.*

Hayes challenges the evidence concerning the identity of the assailant. Specifically, he argues the eyewitness identifications by Butcher and Oertwig are not credible and the surveillance footage is inconclusive because it does not definitively show that Hayes was the assailant.

Oertwig identified Hayes as the assailant, although she testified she could only see his eyes. Butcher also identified Hayes as the assailant, though he was less certain. When asked to describe the man who shot him, Butcher testified:

A. At the time he had like—I don't know what you call it. Like a porcupine, his hair. He was wearing a hoodie. I believe it was a hoodie. I don't know what color it was. I just remember there might have been rubber bands in his hair. I'm not for sure.

Q. How did you describe his hair? A. Like a porcupine.

Q. Sticking up on top? A. Yeah. I don't know.

Q. What was the race of the individual? A. Black.

Q. Approximate age? A. I would say 20s.

Q. Aside from him wearing a hoodie, did you make any observations about what he was wearing? A. No.

Q. Mr. Butcher, do you feel you can make a positive identification of the person who shot you? A. Yes.

Q. You think you can? A. I mean, it's as close as I can, but the hair is different, though.

Q. You told us before you couldn't be a hundred percent sure. A. That's correct.

Q. Do you feel that same way today? A. Yes.

Q. But you did see this person? A. Yes.

Q. Is there anybody here today in this courtroom, sir, who looks like the person that bummed that cigarette off of you and shot you? A. Right there (indicating).

Q. Is there anything different about this person than the person you observed shooting you? A. Just the way his hair is.

Q. Aside from that, does he look very similar to the person who shot you? A. Yes, he does.

Q. Are you saying a hundred percent identification? A. No.

Q. But he looks like the same guy? A. Correct.

At the close of evidence, Hayes moved for judgment of acquittal. He argued, in part, that there was insufficient evidence to establish he was the assailant. The trial court denied the motion, noting the testimony of Oertwig and Butcher was bolstered by surveillance video footage and Shade's testimony.

We agree there is adequate evidence by which a rational jury could find Hayes guilty beyond a reasonable doubt. Although Hayes notes discrepancies in the evidence—for instance, Shade's testimony that she never saw him in

possession of a firearm on May 12—any conflicts in the evidence are to be resolved by the jury, whose job it is to sort out and weigh the evidence and determine credibility. *See State v. Fetters*, 562 N.W.2d 770, 775 (Iowa Ct. App. 1997). Although Hayes argues that Oertwig only saw her assailant's eyes and Butcher was not "a hundred percent certain" in his identification, "the strength of the identity evidence of these witnesses is a question for the jury." *State v. Shorter*, 893 N.W.2d 65, 74 (Iowa 2017). The identifications of Hayes made by Oertwig and Butcher are bolstered by the surveillance video footage from May 12. Although Hayes argues the footage is "inconclusive" because it does not definitively show him to be the assailant, Shades identified Hayes as the person exiting the front passenger seat of her vehicle. The jury could reasonably conclude that the same person is seen assaulting Oertwig and shooting Butcher before returning to Shade's apartment.

Sufficient evidence supports Hayes's convictions.

**III. Admissibility of Evidence.**

Hayes next contends the trial court erred in admitting the video of his June 2016 police interview, which shows him being escorted into the interview room in handcuffs, as well as a photograph taken from the video footage that shows him in handcuffs. He argues the probative value of the evidence was outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").

We review evidentiary rulings for an abuse of discretion. *See State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). We will reverse only when the

district court's decision rests on grounds or on reasons clearly untenable or to an extent clearly unreasonable. *State v. Redmond*, 803 N.W.2d 112, 117 (Iowa 2011). Because weighing probative value against unfair prejudice is not an exact science, we give the trial court a great deal of leeway in making this judgment. *See State v. Einfeldt*, ___ N.W.2d ___, ___, 2018 WL 1980676, at *8 (Iowa 2018).

Rule 5.403 sets forth a two-step test for admissibility of evidence; first, the court must consider the probative value of the evidence, and second, the court must balance the probative value against the danger of unfair prejudice. *See id.* Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action." Iowa R. Evid. 5.401. Evidence is unfairly prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action [that] may cause a jury to base its decision on something other than the established propositions in the case." *State v. Shanahan*, 712 N.W.2d 121, 137 (Iowa 2006) (citation omitted).

The State argues the evidence was relevant to the identification issue. Hayes was interviewed by police in June 2016, several weeks after the May 12 assault on Oertwig and the shooting of Butcher. The evidence indicates Hayes's hairstyle at the time of trial was different from his hairstyle on May 12, whereas his hairstyle in the interview video and photograph from was similar to his hairstyle on May 12. Because the evidence was probative of whether Hayes was the assailant, the question is whether its probative value was outweighed by the danger of unfair prejudice. The trial court found it was not:

The court overruled that objection and allowed that evidence in for the following reason. The testimony indicated that the defendant was arrested in late June shortly before the interrogation, and the circumstances of his arrest had previously been explained to the jury. As a result, this jury was aware the defendant was arrested. They were aware the interrogation took place at the police station shortly after that arrest. And, as a result, any prejudice that might have arisen from seeing the defendant in handcuffs is de minimis in the Court's view.

By way of 5.103(b), that is the reason why the court allowed the exhibits. If there is any prejudice, it is so insignificant, in light of the testimony, that I don't believe it is unfair prejudice.

An off-duty police officer testified the he saw Hayes on June 26, 2016, recognized that Hayes had an outstanding arrest warrant, and arrested him. Detective White testified that Hayes was arrested and taken into custody at the police station in June 2016, during which time the detective interviewed him. Therefore, the video and photograph did not depict anything that the jury did not already know. *See State v. Buchanan*, No. 03-0230, 2004 WL 1071896, at \*5 (finding defendant was not prejudiced by evidence showing him in prison garb and handcuffs where the jury already knew the defendant was in custody when the photos were taken because "[n]o prejudice can result from seeing that which is already known" (quoting *Estelle v. Williams*, 425 U.S. 501, 507 (1976))). The arrest and interview concerned the events of May 12, for which Hayes was on trial, not an unrelated arrest or conviction, lessening the likelihood of unfair prejudice. *See State v. Clay*, 213 N.W.2d 473, 480 (Iowa 1973) (finding court did not abuse its discretion in admitting into evidence for the purpose of identification a mug shot taken after defendant's arrest for the crime upon which his prosecution was based). As such, the trial court did not abuse its discretion in admitting the video or photograph.

**IV. Ineffective Assistance of Counsel.**

Finally, Hayes argues his trial counsel was ineffective in several respects. Our review of ineffective-assistance-of-counsel claims is de novo. *See State v. Halverson*, 857 N.W.2d 632, 634 (Iowa 2015). However, we generally preserve such claims for postconviction-relief proceedings where a proper record can be developed. *State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013). We will only address claims of ineffective assistance of counsel on direct appeal when the record is sufficient to decide the issue. *See State v. Ross*, 845 N.W.2d 692, 697 (Iowa 2014).

We employ a two-prong test for determining whether counsel was ineffective. *See State v. Russell*, 897 N.W.2d 717, 729 (Iowa 2017). The first prong of the test, established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), requires a showing that counsel failed to perform an essential duty. *See State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). The second prong requires a showing of prejudice. *See id.* While asserting its right to apply different principles when analyzing state constitutional claims, our supreme court has applied the *Strickland* test when reviewing ineffective-assistance claims brought under the Iowa Constitution. *See, e.g.*, *State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015) (applying the *Strickland* standard to ineffective-assistance claims brought under the Iowa Constitution when the defendant did not suggest the claims should be reviewed differently under the Iowa Constitution).

Hayes argues his trial counsel was ineffective in failing to request a limiting instruction regarding the video of his police interview, arguing it was "rife with prejudicial hearsay statements" made by Detective White. For instance, when

Hayes tells the detective he was not in town on May 12, 2016, Detective White responds, "Yes, you were." He argues Detective White's "constant accusations and character attacks undoubtedly influenced the jury," and counsel therefore had a duty to request the jury be instructed that statements and questions by law enforcement are not evidence. However, the jury was shown only the first three-and-one-half minutes of the interview, which just shows Hayes being escorted into the interview room and then sitting there by himself. The interview does not begin until 5 minutes and 45 seconds into the video. Hayes speculates the jury may have viewed the entire video during its deliberations. Mere speculation cannot be a basis for finding counsel ineffective. The record is insufficient to decide the issue, so we preserve it for possible postconviction relief proceedings to allow full development of the record.

Hayes also argues his trial counsel was ineffective in failing to request a curative instruction concerning the video and photograph evidence depicting him in handcuffs. As stated above, the jury already knew Hayes was arrested in connection with the events of May 12. In light of the evidence of Hayes's guilt, there is no reasonable possibility that the brief depiction of Hayes in handcuffs affected the outcome of trial.

Hayes next argues his right against self-incrimination was violated by jury instruction number 14, which states: "Evidence has been offered to show that the Defendant made statements at an earlier time and place. If you find any of the statements were made, then you may consider them as part of the evidence, just as if they had been made at this trial." This instruction is based on Iowa Criminal Jury Instruction 200.44. "Normally, we are slow to disapprove of the uniform jury

instructions." *State v. Ambrose*, 861 N.W.2d 550, 559 (Iowa 2015). This court recently held this instruction correctly states the law and giving the instruction was not in error.[1] *See State v. Payne*, No. 16-1672, 2018 WL 1182624, at *8-9 (Iowa Ct. App. Mar. 7, 2018), *petition for further review pending*; *see also State v. Wynn*, No. 16-2150, 2018 WL 769272, at *2-3 (Iowa Ct. App. Feb. 7, 2018) (finding no ineffective assistance of counsel in failing to object to the instruction), *petition for further review denied*, Apr. 4, 2018; *State v. Wineinger*, No. 16-1471, 2017 WL 6027727, at *3 (Iowa Ct. App. Nov. 22, 2017) (stating the same instruction was a correct statement of the law), *petition for further review denied*, Feb. 28, 2018; *State v. Tucker*, No. 13-1790, 2015 WL 405970, at *3 (Iowa Ct. App. Jan. 28, 2015) (stating the instruction was not misleading), *petition for further review denied*, Mar. 25, 2015. Hayes cannot establish his counsel was ineffective for failing to object to instruction no. 14. "Counsel has no duty to raise an issue that has no merit." *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).

Finally, Butcher argues his trial counsel was ineffective in failing to request a jury instruction concerning impeachment testimony relating to Butcher's prior convictions for crimes involving dishonesty. We preserve this issue for postconviction proceedings to allow full development of the record.

**AFFIRMED.**

---

[1] The instruction is not without its critics. *See Payne*, No. 16-1672, 2018 WL 1182624, at *11-12 (Tabor, J., dissenting).