# IN THE COURT OF APPEALS OF IOWA

No. 18-0242
Filed June 5, 2019

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**LARRY DONELL WHALEY,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Chris Foy, Judge.

A defendant appeals his conviction for second-degree murder. **AFFIRMED.**

Alfredo Parrish and Adam C. Witosky of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins and Douglas Hammerand, Assistant Attorneys General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A jury found Larry Whaley guilty of murder in the second degree. The verdict followed the State's evidence showing Whaley fired three shots through his closed apartment door—the first shot killed Samantha Teeter. On appeal, Whaley contends the State offered insufficient evidence to prove he acted with malice aforethought and without justification. Whaley also argues his trial counsel was ineffective for not further investigating an insanity defense and his competency to stand trial.

Viewing the record in the light most favorable to the verdict, we find substantial evidence to sustain the second-degree murder conviction. But because Whaley's claims of ineffective assistance involve questions of trial strategy and the record is inadequately developed to address those questions, we preserve them for possible postconviction-relief proceedings.

I.      **Facts and Prior Proceedings**

In the early morning hours of December 2, 2016, Samantha Teeter and her boyfriend, Kaleb Van Scyoc, knocked on the door of Whaley's apartment. Rather than opening the door or asking who was there, Whaley shot three times. Van Scyoc heard a loud slapping noise, and when he turned to look at Teeter, he saw "this whole side of her face was gone."

The shooting culminated a chaotic day. On the morning of December 1, Whaley "evicted" Cory and Heather Mays from his apartment with the assistance of Mason City police. Cory was upset about moving out and kept a key to the apartment so he could retrieve their belongings. Whaley believed Cory possessed a gun.

That same day, Whaley hung out with Debra Ewing. Ewing, who met Whaley three weeks earlier, had a past relationship with Jason Bendickson. She was staying with a friend because she feared Bendickson. When Bendickson tracked down Ewing at the friend's home, Whaley picked her up in his car.

Later in day, Whaley and Ewing met up with Teeter and Van Scyoc. The foursome drove around in Whaley's car, making several stops. At one stop, Whaley purchased a revolver, telling Ewing it would protect her from Bendickson. Then they stopped at Walmart to buy ammunition and a cellphone for Ewing. Around 9:40 p.m., Whaley rented a room at the Days Inn to conceal Ewing from Bendickson. But soon Ewing said she would rather spend the night at Whaley's apartment, so they left. With Teeter and Van Scyoc, they returned to Whaley's apartment. Whaley urged Ewing to return to the motel "because he didn't want to kill anybody" that night—"his words," Ewing clarified—but Ewing prevailed upon him to stay at the apartment.

Whaley handed Teeter a key to his apartment. Teeter, Van Scyoc, and Ewing went inside while Whaley went out for groceries. Teeter and Van Scyoc left before Whaley returned. Ewing told Whaley Teeter would be back. Meanwhile, Ewing stretched out on the couch to sleep.[1] Whaley sat by her feet, with the gun on his lap—Ewing assumed he was protecting her.

It was around 3:40 a.m. when Teeter and Van Scyoc returned to the apartment. Van Scyoc testified he thought Teeter tried to knock. Eventually, Teeter used Whaley's key to unlock the door. Then Van Scyoc knocked and called

---

[1] Ewing admitted using methamphetamine and heroin that night.

out, "It's Kid," his nickname. Inside the apartment, Whaley woke Ewing up, saying "somebody's at the door." Whaley then stood up and shot the gun toward the door.

In an interview with police, Whaley recalled standing about five feet from the door when he fired the first shot. "He said it was a warning shot." Whaley then fired two more shots through the door and told Ewing to call 911. Whaley told police "he was hoping that it was Cory Mays" on the other said of the door. Ewing testified she believed Bendickson was the person trying to enter the apartment. In fact, Teeter was behind the door, and Whaley's first bullet fatally wounded her.

The State initially accused Whaley of first-degree murder, but amended the charge to second degree. During the prosecution, Whaley filed many letters with the court as a self-represented party. The court originally appointed public defender Susan Flander to represent Whaley, but Flander withdrew due to a conflict of interest. Michael Adams replaced Flander. Adams sought and was granted a court-ordered competency evaluation of Whaley.

At the competency hearing, the evidence showed Whaley was 61 years old, a former Marine, and a retired machine operator. He had a long history of abusing substances—including alcohol, crack cocaine, heroin, marijuana, and methamphetamine. In early November 2016, Whaley's mental health plummeted. Four times, Mason City police officers responded to calls at his apartment and found Whaley in need of treatment. Whaley was hospitalized all four times. In one instance, Whaley wielded a knife and claimed people were inside his home with a gun; in another, he told police to check the windows and "watch their backs"; on yet another occasion, Whaley said people were in his home preventing him from leaving, and he repeatedly asked if the hospital windows were bulletproof.

Dr. John Bayless, a neuropsychologist, and Dr. Arnold Anderson, a psychiatrist, separately examined Whaley and found him competent to stand trial. Both experts based their conclusions on police reports and deposition transcripts from the November 2016 incidents, as well as notes from two psychiatric visits and a variety of other sources. The experts did not review medical records from Whaley's November hospitalizations.

At trial, Whaley advanced a claim of self-defense. The jury ultimately convicted Whaley guilty of second-degree murder. Whaley appeals.

## II. Analysis

### A. Jury Verdict

"We review challenges to the sufficiency of evidence for correction of errors at law." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). We will uphold a guilty verdict if it is supported by substantial evidence. *Id.* Substantial evidence exists when a rational trier of fact would be convinced the defendant is guilty beyond a reasonable doubt. *Id.* We view all relevant evidence in the light most favorable to the State. *Id.* Evidence is not substantial if it raises only suspicion, speculation, or conjecture. *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016).

To prove murder in the second degree, the State had to prove these elements beyond a reasonable doubt:

1. On December 2, 2016, Defendant shot Samantha Teeter.
2. Samantha Teeter died as a result of being shot.
3. Defendant acted with malice aforethought.
4. Defendant acted without justification.

Whaley concedes elements (1) and (2). But he contends the evidence was insufficient to show malice aforethought and lack of justification.

*1. Malice Aforethought.* Whaley contends the State did not prove he shot Teeter with malice aforethought. After all, Whaley argues, the State offered "no evidence of any anger or conflict between Whaley and Teeter from which a jury could find any malice." But Whaley's contention rests on a misapprehension of the requisite state of mind. Malice is not mere spite, hatred, or ill will toward another. *State v. Leedom*, 76 N.W.2d 773, 777 (Iowa 1956). Rather, "[m]alice aforethought requires the actor to have a 'fixed purpose or design to do physical harm to another that exists before the act is committed.'" *State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010) (quoting *State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002)), *overruled on other grounds by Alcala v. Mariott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). While malice must exist before the act occurs, it need not exist for any specific length of time. *State v. Reeves*, 636 N.W.2d 22, 25–26 (Iowa 2001). A jury may infer malice from the intentional use of a deadly weapon in a deadly manner, even if the perpetrator had no chance to deliberate. *Id.* at 25. The presumption of malice from wielding a gun may be rebutted with evidence the shooting was "accidental, under provocation, or because of mental incapacity." *State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003).

A reasonable jury could conclude Whaley acted with malice aforethought. A gun is a dangerous weapon, and Whaley fired through his front door in a deadly manner—knowing a person stood on the other side. Whaley contends he shot under provocation, but the circumstances belie that contention. Whaley did not know who was behind the door, nor did he take time to find out before he began firing.

Whaley insists he knew Bendickson was angry and out looking for Ewing. And "of more concern" to Whaley was Cory Mays, who likely possessed a firearm, had threatened Whaley, and possessed a key to the apartment. But the record contained no proof of any specific or imminent threats from either Mays or Bendickson on the night in question. Whaley also knew Teeter planned to return—he gave her a key, which she used to open the door.

Regardless of Whaley's indiscriminate targeting, he could act with malice aforethought toward an unidentified victim.[2] Malice aforethought only requires a fixed purpose or design to do harm to *another*. *See Lyman*, 776 N.W.2d at 877. The evidence shows Whaley intended to shoot at whoever was behind the door. The jury could reasonably conclude from the use of a dangerous weapon that Whaley had the fixed purpose of harming that person. He took the deliberate steps of aiming and firing multiple times. Whaley claims he gave a verbal warning after the first shot, but Van Scyoc did not hear it. In addition, his so-called "warning shot" struck Teeter's face, blasting off part of her skull. Whaley did not fire a warning to scare off the alleged intruder, he shot on a trajectory that proved fatal. On this record, a reasonable jury could conclude Whaley acted with malice aforethought when he shot Teeter through the door.

---

[2] Wayne LaFave discusses a similar mistaken-identity situation:

> [I]n the semi-darkness *A* shoots, with intent to kill, at a vague form he supposes to be his enemy *B* but who is actually another person *C*; his well-aimed bullet kills *C*. *A* is guilty of murdering *C,* to the same extent he would have been guilty of murdering *B* had he made no mistake. *A* intended to kill the person at whom he aimed, so there is even less difficulty in holding him guilty than in the bad-aim situation.

1 Wayne R. LaFave, *Substantive Criminal Law* § 6.4(d) (3d ed.) (footnotes omitted).

*2. Justification.* Whaley contends he shot in self-defense or the defense of another and was thus justified. When a defendant raises the justification defense, the burden shifts to the State to prove the action was not justified. *State v. Rubino*, 602 N.W.2d 558, 565 (Iowa 1999). "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force." Iowa Code § 704.3 (2016).[3] At the time of the shooting, the State could overcome a justification defense by proving any of the following facts: (1) the defendant initiated or continued the incident; (2) the defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him; (3) the defendant had no reasonable grounds for the belief; (4) the force used was unreasonable; or (5) an alternative course of action was available to the defendant. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).

Whaley argues the following circumstances demonstrate he was justified in shooting: He was in his home in the early morning hours when someone tried to enter unannounced through the front door—the only exit. Whaley knew two men were looking to cause harm to either him or Ewing. He knew at least one of those men likely had a gun.

Whaley was not required to retreat from his home if the circumstances presented a "justifiable belief that his life [was] in danger or that he [would] sustain a great bodily injury." *See State v. Leeper*, 200 N.W. 732, 736 (1924). But the jury

---

[3] The legislature amended this provision in 2017 to state: "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any <u>actual or</u> imminent use of unlawful force." 2017 Iowa Acts ch. 69, § 41.

was entitled to find his professed belief was unreasonable. *See Thornton*, 498 N.W.2d at 674.

Neither Bendickson nor Mays posed a specific threat to Whaley or Ewing at the time of the shooting. While Mays had a key to the apartment, he had given Whaley no reason to believe he would show up spoiling for a fight in the dead of the night. As for Bendickson, if Whaley had a reasonable fear he was still searching for Ewing, they could have stayed at the motel as originally planned. Whaley even told Ewing he did not want to "kill anyone" that night as a reason for not retreating to his apartment, yet the pair returned anyway. Whaley also knew Teeter would be returning and had a key to the apartment. Instead of asking who was at the door, Whaley took aim and fired where a person would be standing behind the door. A reasonable jury could conclude Whaley blindly shot through his door without a reasonable belief that such force was necessary to defend against the imminent use of force by the person on the other side. Accordingly, we cannot reverse on the justification defense.

## B. Ineffective Assistance Of Counsel

Ineffective assistance of counsel is a constitutional claim, rooted in the Sixth Amendment of the United States Constitution and article 1, section 10 of the Iowa Constitution. Therefore, our review is de novo. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999).

To establish his ineffective-assistance claim, Whaley must show (1) trial counsel failed to perform an essential duty, and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Harrison*, 914 N.W.2d 178, 188 (Iowa 2018). Whaley must prove both elements of the two-pronged test

by a preponderance of the evidence.  *See State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015); *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

On the duty prong, Whaley must show trial counsel "performed below the standard demanded of a 'reasonably competent attorney.'"  *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland*, 466 U.S. at 688).  Trial counsel's performance is measured against "prevailing professional norms." *Ledezma*, 626 N.W.2d at 142 (quoting *Strickland*, 466 U.S. at 688).  Counsel is presumed to have acted competently.  *Id.*  Reasonable strategic decisions, even if ultimately unsuccessful, are not grounds for an ineffective-assistance-of-counsel claim.  *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006).

We may decide a claim of ineffective assistance on direct appeal if the record is sufficient, or we may preserve it for postconviction proceedings.  *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).  If the appellant's brief does not develop a claim sufficiently for our consideration, we need not entertain it, but we should not "outright reject it."  *State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018).  Leaving such claims for a later hearing allows for full development of facts surrounding counsel's conduct.  *State v. Atley*, 564 N.W.2d 817, 833 (Iowa 1997). Postconviction proceedings are often necessary to sort improvident trial strategy from ineffective assistance.  *Ondayog*, 722 N.W.2d at 786.

Counsel has a duty to conduct a reasonable investigation.  *Strickland*, 466 U.S. at 691.  Whaley argues his attorney should have fully investigated Whaley's mental health in pursuit of an insanity defense.  To prevail on an insanity defense, Whaley had to show, by the preponderance of the evidence, when he committed the crime he suffered from a diseased or deranged condition of the mind rendering

him (1) incapable of knowing the nature and quality of the act he was committing, or (2) incapable of distinguishing between right and wrong in relation to that act. *See* Iowa Code § 701.4; *State v. Harkness*, 160 N.W.2d 324, 330 (Iowa 1968) (adopting M'Naghten rule); *see also M'Naghten's Case* (1843) 8 Eng. Rep. 718, 722 (H.L.). Whaley points to numerous signs of his ongoing paranoia, including repeated hospitalizations in the month before the shooting and his pro se letters to the trial judge. He argues his trial attorney realized he could be suffering from a mental disorder, yet did not seek psychiatric records or consult an expert to assess the viability of an insanity defense.

Whaley also complains although trial counsel correctly sought a competency evaluation, he failed to conduct an independent investigation into Whaley's mental health and all but conceded Whaley's competency based on the two court-ordered evaluations. He contends counsel should have pursued another evaluation.

The State responds the record is inadequate to show counsel failed to fully investigate the viability of the insanity defense—the record does not disclose whether counsel considered raising an insanity defense or what advice counsel gave Whaley concerning such a defense; nor does it show Whaley's view on claiming he was not guilty by reason of insanity. Whaley went to trial on a justification defense; it is possible counsel and Whaley decided it would appear inconsistent to assert an insanity defense as well. Such strategic discussions constitute critical evidence for an ineffective-assistance claim. *See Ondayog*, 722 N.W.2d at 787.

As to a more persistent competency fight, the State asserts, "[A]n absence of record evidence hobbles much of Whaley's argument." We agree it is not clear what a third evaluation would have shown that the first two did not. The record does not disclose what the medical records from the November 2016 hospitalizations would have added to the evaluators' assessments of Whaley's mental state at the time of trial, more than a year later.

Because our direct-appeal record does not show how counsel's alleged failures would have impacted Whaley's chances in the competency hearing and at trial, we affirm his conviction for second-degree murder but preserve the complaints about his representation for possible postconviction-relief proceedings.[4] *See Harris*, 919 N.W.2d at 754.

**AFFIRMED.**

---

[4] In his reply brief, Whaley argues for the first time Iowa courts should not be bound by federal interpretations of the Sixth Amendment, and instead should analyze ineffective assistance claims under article I, section 10 of the Iowa Constitution, which guarantees assistance of counsel. Whaley argues Iowa attorneys should be held to the standard of conduct exemplified by "a reasonably competent Iowa attorney" and asserts, "Iowa should demand more from Iowa attorneys consistent with our history and tradition." He also argues he should not be required to prove prejudice when the trial attorney's performance is sub-standard. But we must follow controlling precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). And we do not address issues asserted for the first time in a reply brief. *Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992).