# IN THE COURT OF APPEALS OF IOWA

No. 19-0276
Filed June 3, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KEYSHAUN VAUGHN JONES,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,
Judge.

A defendant appeals his conviction for perjury. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Nan Jennisch, Assistant
Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney
General, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

Keyshaun Jones denied in his deposition that he contacted law enforcement about a suspect in a fatal shooting. A jury convicted Jones of perjury. He appeals that verdict, complaining about the admission of hearsay and the performance of his trial counsel. Finding no grounds for relief in either instance, we affirm.

### I.      Facts and Prior Proceedings

Choice Elliston died of a gunshot wound to the head in May 2017. At the time of the shooting, he was a backseat passenger in a car snarled in a gun fight between rival gangs. Despite an extensive investigation, Des Moines police did not make any arrests that summer.

Come fall, police caught a break in the case. Jones reached out to offer information. In a meeting with Detective Jeff Shannon, Jones recalled being at a friend's apartment the night of the shooting when Jahmar Mustin knocked on the door.[1] After letting him in, Jones saw blood and brain matter on Mustin's clothes. Grateful for the lead, another detective, Curtiss Accola, followed up with Jones and his attorney. In the meeting with Detective Accola, Jones repeated the same information about his encounter with Mustin.

Not finished with his mission, in December Jones sent two notarized letters to the police chief. By way of introduction, the letters said Jones had "just recently found the courage to come forward with information that may very well bring a grieving family some much needed closure." One of the letters memorialized

---

[1] The apartment belonged to Porsha Thompson. Jones said he was "hanging out" with her brother, Martay Thompson.

Mustin's surprise visit to the apartment where Jones was "hanging out." The letter said Mustin admitted, "Choice got shot."

Spurred by the information from Jones, the Polk County Attorney arrested Mustin for murder. As part of that murder case, Jones appeared for a deposition in August 2018. After swearing to tell the truth, Jones denied meeting either detective and denied writing the letters. When shown the envelope addressed to the police chief, Jones testified, "[T]hat don't look like my handwriting." Jones also denied knowing Mustin and denied being at the apartment in question. Jones likewise rejected any suggestion that he saw blood on Mustin.

Alleging he made several false statements of material fact in that deposition, the State charged Jones with perjury in violation of Iowa Code section 720.2 (2018).[2] At the jury trial, the State called the court reporter for Jones's deposition and a notary from the jail as witnesses. Detective Shannon and Detective Accola also testified for the prosecution. The defense did not present any evidence but argued in closing that the State did not meet its burden of proof beyond a reasonable doubt. Defense counsel acknowledged Jones gave "evasive answers" in his deposition but insisted his statements did not amount to the crime of perjury.

---

[2] "A person who, while under oath or affirmation in any proceeding or other matter in which statements under oath or affirmation are required or authorized by law, knowingly makes a false statement of material facts or who falsely denies knowledge of material facts, commits a class 'D' felony." Iowa Code § 720.2.

The jury found Jones guilty as charged. As part of its verdict, the jury answered this special interrogatory:

**SPECIAL INTERROGATORY**

If you find the defendant is guilty of perjury, please underline or circle the statements you found to be perjury for the following list in instruction no __16__ element 3a or 3b.

3. a. The defendant made the following statements of material fact while under oath:
   (1.) that he did not draft and/or sign a letter date December 21, 2017; and/or
   (2.) that he did not make statements of law enforcement based upon his conversation with Jahmar Mustin; and/or

3. b. The defendant denied knowledge of the following material facts while under oath:
   (1.) that he denied going to Porsha Thompson's apartment; and/or
   (2.) that he denied speaking with Jahmar Mustin; and/or
   (3.) that he denied mailing the letter dated December 21, 2017.

Jones now appeals.

## II.     Scope and Standards of Review

Jones's two issues each call for a different standard of review. First, we review hearsay rulings for the correction of legal error. *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020). Second, our treatment of his ineffective-assistance-of-counsel claim is the equivalent of a de novo review. *State v. Williams*, 341 N.W.2d 748, 752 (Iowa 1983).

## III.    Analysis

### A.     Hearsay

Jones argues the district court improperly overruled his hearsay objection during the testimony of Detective Accola. Here's the setup. In response to the prosecutor's questions, the detective relayed the details of his conversation with Jones to the jury. Accola testified that Jones implicated Mustin in Elliston's killing.

Then the prosecutor asked: "And how did Mr. Jones's interview play in ultimately issuing an arrest warrant?" The detective answered:

> It was a two-part thing. With him, we ended up getting Jahmar Mustin in for an interview. And that, coupled with Mr. Jones's agreement to testify to the things that he had told us in the proffer interview, went together as being enough for us to charge and feel comfortable charging at that time.

The prosecutor followed up: "So Mr. Mustin's interview and Mr. Jones's interview corroborated one another?" Accola started to answer, "yes" when defense counsel objected, arguing what the detective might have learned from Mustin would be hearsay. The court overruled the objection. Accola then testified: "Without getting into detail about the interview with Mr. Mustin, he corroborated all the detail facts" that the detective learned from Jones about who was at Thompson's apartment. Accola said Mustin admitted speaking to Jones, adding: "Any statements given by Mr. Mustin were against his own personal interest as he was being interviewed as a possible homicide suspect." *See generally* Iowa R. Evid. 5.804(b)(3).[3]

On appeal, Jones argues Accola's testimony about Mustin's interview was inadmissible hearsay. *See* Iowa R. Evid. 5.802. Hearsay is a statement the declarant made out of court offered for the truth of the matter asserted. Iowa R. Evid. 5.801(c). Jones believes Mustin's statements meet that definition because the State offered them to prove Jones was lying when he testified in his deposition

---

[3] This exception defines a statement against interest as
> [a] statement that . . . [a] reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability . . . .

Iowa R. Evid. 5.804(b)(3)(A).

that he was not at Thompson's apartment and did not talk to Mustin. As for the statements-against-interest exception Accola mentioned, Jones asserts Mustin's acknowledgement that he was at the apartment with Jones was not a confession or admission that was independently incriminating.

Jones also complains the detective improperly introduced "backdoor hearsay" into the record. *See State v. Huser*, 894 N.W.2d 472, 497 (Iowa 2017) (describing practice: "while the question and answer did not produce hearsay 'in the classic or textbook sense,' the questioning was nevertheless designed to circumvent the hearsay rule and present the jury with information from unsworn, out-of-court sources").

The State defends on several fronts. First, the State contends Accola's brief reference to Mustin's statements did not fit the hearsay definition. Supposedly, the prosecutor offered the testimony to prove the statements were made and not for the truth of their content. We disagree there. The prosecutor would not have asked if the two interviews corroborated one another if the content was not critical.

Second, the State argues Mustin's out-of-court statements fell under the hearsay exception for statements against interest. Iowa R. Evid. 5.804(b)(3). Countering Jones's position, the State contends Mustin's declarations met the "threshold requirement of adversity" discussed in *State v. Paredes*. 775 N.W.2d 554, 565 (Iowa 2009) (examining whether the statement was sufficiently inculpatory to be a statement against penal interest). We agree with the State on this point. A statement need not amount to a full confession to be permitted as a statement against penal interest. *Id.* at 566 (focusing on tendency language in rule). If Mustin's interview corroborated the details given by Jones, as the detective

testified, then it was sufficiently incriminating to satisfy the adversity requirement of the rule. A reasonable person in Mustin's situation would not have made statements with that risk of criminal exposure if he did not believe them to be true. Because the evidence fit the exception, the district court properly allowed Mustin's hearsay statements in through the front door.

We could end our analysis there. But we opt to also consider the State's third contention: Jones was not prejudiced by the challenged hearsay. Accepting evidence is not error unless the ruling affected "a substantial right of the party" resisting its admission. Iowa R. Evid. 5.103. We presume improper admission of hearsay is prejudicial unless the proponent of the evidence can show otherwise. *State v. Elliott*, 806 N.W.2d 660, 667 (Iowa 2011).

The State can overcome the presumption of prejudice because of the jury's answers to the special interrogatory. The jury found Jones made five different false statements of material fact. Those included (1) he did not draft or sign the December 2017 letter, (2) he did not make prior statements to law enforcement, (3) he was not present at Thompson's apartment, (4) he did not speak to Mustin, and (5) he did not mail the December 2017 letter. Mustin's out-of-court declarations only affect the third and fourth statements. The State offered separate evidence to show the falsity of the other three statements. The guilty verdict can rest on Jones's false statements about his contacts with police. Any error in the admission of the hearsay was not prejudicial.

### B.     Ineffective Assistance of Counsel

Jones next argues he received ineffective assistance of counsel.[4]   He contends his attorney should have objected when Detective Accola testified that certain statements in Jones's deposition were false.  We include an example of the testimony Jones finds troubling:

```
        Q.   Can you read that question that was asked
    of Mr. Jones to the jury, please.
        A.   Question:   "So, Mr. Jones, I'm sure you're
    aware that you are here because you are listed as a
    witness for the State in the case of State versus
    Jahmar Mustin, events surrounding the death of Choice
    Elliston on May 9, 2017.  Are you familiar with that
    incident?"
        Q.   And what was Mr. Jones's answer?
        A.   "No."
        Q.   Was that answer consistent with your
    interview and the letter of December 21, 2017, that
    you just read to the jury?
        A.   No.
        Q.   And was that a false statement?
        A.   Yes.
```

---

[4] The Iowa Code no longer allows us to decide claims of ineffective assistance of counsel on direct appeal.  *See* 2019 Iowa Acts ch. 140, § 31 (to be codified at Iowa Code § 814.7 (2020)).  But our supreme court held in *State v. Macke* that this provision only applies to direct appeals from judgment entered after July 1, 2019. 933 N.W.2d 226, 228 (Iowa 2019).  Because the district court entered judgment in January 2019, we may consider Jones's claim of ineffective assistance.  *See State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020).  We often preserve ineffective-assistance claims for postconviction-relief proceedings.  *Id.*  But here the record is adequate to resolve the claim.

Jones cites cases that prohibit one witness from commenting on another witness's credibility. *See generally State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014) (holding expert testimony not admissible to bolster alleged victim's credibility); *Bowman v. State*, 710 N.W.2d 200, 204 (Iowa 2006) (reiterating rule that bars attorney from asking one witness whether another witness is telling the truth). At their core, those cases safeguard credibility determinations as the jury's province.

To succeed on his claim, Jones must show his trial attorney breached a material duty resulting in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Jones must prove both prongs by a preponderance of the evidence. *See State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015).

We can resolve Jones's claim on the duty prong. Defense counsel had no obligation to object. Detective Accola was not offering an expert opinion on Jones's credibility. Nor was Accola commenting on the credibility of another witness because Jones did not testify at trial. Rather, Accola described how Jones's deposition testimony contradicted facts from the detective's investigation and Jones's previous statements to police. Detective Accola could characterize that contradiction as Jones making "false statements"—as proof of perjury— without violating the rule against vouching. *See State v. Castile*, No. 14–0069, 2015 WL 360142, at *4 (Iowa Ct. App. Jan. 28, 2015) (finding no duty to object to officer's testimony that he arrested defendant after conducting interviews and concluding testimony of witnesses implicating defendant were consistent with the physical evidence); *see also People v. Wilkins*, No. 332430, 2017 WL 4158023, at *7 (Mich. App. Sept. 19, 2017) (per curiam) (rejecting contention that detective

improperly vouched for credibility of absent witnesses by testifying that neither had been charged with perjury).

The detective's testimony did not usurp the function of the jury. It was still up to the jurors whether to believe Accola's assessment that Jones's deposition testimony was false because it ran counter to the facts of the investigation and Jones's earlier communications with police. Because Accola's testimony was admissible, Jones's counsel had no duty to object. Jones's claim of ineffective assistance fails.

**AFFIRMED.**