# IN THE COURT OF APPEALS OF IOWA

No. 24-0195
Filed March 19, 2025

**QUINTIN DEMILO CLEMONS,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Scott County, Meghan Corbin, Judge.

　　An applicant appeals the denial of postconviction relief from his conviction for possession of, or conspiracy to possess, marijuana with the intent to deliver as a habitual offender. **AFFIRMED**.

　　Mark C. Meyer, Iowa City, for appellant.

　　Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

　　Considered by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

Quintin Clemons seeks postconviction relief ("PCR"), arguing that he received ineffective assistance of counsel because his counsel failed to move to suppress evidence found in Clemons's pocket through a warrantless search and seizure during a traffic stop. The district court denied Clemons's application, finding that he failed to prove that his counsel breached an essential duty because a motion to suppress would have been meritless. And on appeal, Clemons contends the court erred in relying on the search-incident-to-lawful arrest and *Terry*-pat-down exceptions to the warrant requirement to find his suppression argument meritless—mainly because he believes the court misunderstood the factual record of the circumstances of the search and seizure of the evidence.

On our de novo review, we find some of Clemons's clarifications to the timeline of events well taken. But even so, we find that the evidence was initially found in a lawful pat-down search. And then it was not actually removed from his pocket and seized until later during a search incident to his arrest. So we agree with the district court's conclusion that Clemons failed to prove a breach of an essential duty because any motion to suppress this evidence would have failed. We thus affirm the denial of Clemons's application for postconviction relief.

I.

*The Traffic Stop.* Shortly before 11:00 p.m. one Friday night in August 2018, an officer pulled over a car near a Davenport concert venue for having "extremely tinted front windows." Clemons's girlfriend was the driver and owner of the car. He was sitting in the front passenger seat with his seat reclined so far back that it was almost touching the back seat.

When the officer first approached the car to ask the driver and Clemons for their IDs, the officer could smell a faint odor of marijuana coming from inside the vehicle.[1] Clemons had no ID but told the officer his information. And the officer went back to his squad car to run an identification check on both and get his tint meter to check the tint on the car's window. About ten minutes later, the officer returned to the car, and the smell of marijuana coming from the vehicle had intensified to a "very strong odor of fresh marijuana."

The officer instructed the driver to get out of the vehicle, and she complied. After first denying that she had any marijuana, the driver revealed that she had stuck a bag of marijuana in her pants, reached into the front of her pants, and pulled out a bag of loose marijuana. She turned it over to the officer, stating she had no idea how much marijuana was in the bag. The bag, which was partially ripped, was found later to contain a little less than sixteen grams of marijuana.

The officer thought that the driver would have known how much marijuana she had, given the expense of high-grade marijuana, if it were really hers. And given the intensified odor between his first two encounters, the officer thought it likely that the bag of marijuana had been moved from another location in the car and ripped while being stuffed down the driver's pants while he was back at his squad car. So he left the driver with another officer and returned to the car, where Clemons was still sitting.

---

[1] Because the officer's body-camera video was apparently inadvertently purged by a then-still-new video system, no video is in evidence. As urged by both parties, our factual findings come from (1) the testimony of the officer at the original criminal bench trial; (2) the officer's police report, which Clemons introduced as an exhibit (along with the rest of the minutes of testimony) in the PCR trial; and (3) Clemons's testimony at both the criminal and PCR trial.

According to Clemons, the officer asked to search the vehicle and Clemons responded, "it's not my car so let me get out so you can search it." The officer asked Clemons to step out of the vehicle. Both Clemons and the officer agreed that the officer then conducted a "pat-down" search of Clemons. The officer testified that during that "pat-down of [Clemons's] person," the officer "felt there was a large sum of cash on his person" and that Clemons told the officer it was about $700. The cash was found in Clemons's pocket. But as noted in his report, the officer "did not remove the money from his pocket" at that time.

Rather, the officer searched the rest of the vehicle while Clemons stood with another officer. The officer found three plastic baggies that had the corners torn off in a small compartment of the passenger side door. In the pocket behind the driver's seat, he also found a gallon-size zip-lock bag and a digital scale—both with marijuana residue on them. Based on the officer's training and experience, he believed all these items reflected someone involved in the delivery of drugs—not personal use.

The officer then spoke with the driver again about what he found in her car. She told him that the scale was hers and that she uses it to weigh her diabetic mother's food. She also said it had been in the center console of the car. When the officer told her he had found it in the back seat, she responded that "it must have slid back there." She also said she did not know that the baggies and zip-lock bag were in her car, explaining that lots of people use her car. And she told the officer that they were going to the nearby concert, but they did not end up stopping.

Next, the officer returned to Clemons to ask him about the money. Clemons told the officer that he receives $500 per month in disability and has no other sources of income. As the officer testified, at some point, the officer "ended up pulling [the cash] out of [Clemons's] pocket and counting it in front of [the officer's] squad car camera." Despite Clemons telling the officer that he had $700, the officer counted $986 in cash. The cash was folded down the center into four bundles—a $40 bundle, a $60 bundle, a $65 bundle, and an $821 bundle. Clemons told the officer that he had the money separated because he had bought tickets for the nearby concert, and they were just coming from the concert. But when the officer shared that the driver had told him they did not actually go to the concert, Clemons eventually said they were just hanging out in the concert's parking lot.

Soon after, the officer told Clemons that he would be arrested and directed him to turn around and put his hands behind his back. The driver was also arrested. And they were both transported to the county jail. There, jail staff found another small bag of marijuana still hidden in the driver's pants.

*The Criminal Proceeding.* The State charged Clemons with one class "D" felony: possession of, or conspiracy to possess, marijuana with intent to deliver as a habitual offender in violation of Iowa Code sections 124.401(1)(d) and 902.8 (2018). After a bench trial, the district court found Clemons guilty under both the possession and conspiracy grounds of the statute. And we affirmed the conviction and sentence on direct appeal. *See State v. Clemons*, No.19-0642, 2020 WL 2487617, at *6 (Iowa Ct. App. May 13, 2020).

But in that direct appeal, we declined to address Clemons's claim that his counsel's failure to challenge the warrantless search and seizure of the cash from his pocket was ineffective assistance "because the record [was] inadequate." *Id.* at *5. We reasoned that the "record does not contain information concerning the circumstances that led to a search of Clemons's pockets" or "evidence concerning the basis for the decision to search Clemons," including whether the officer "was conducting a pat-down search for weapons or if he had already decided to arrest Clemons and was conducting a search incident to arrest." *Id.* We also recognized that his attorney "may have had strategic or tactical reasons for deciding not to file a motion to suppress" and was "entitled to his day in court, especially when his professional reputation is impugned." *Id.* (cleaned up). So we preserved the claim for development of a more robust record in "possible postconviction-relief proceedings." *Id.*

*This PCR Proceeding.* Clemons then applied for postconviction relief, again claiming his defense counsel was ineffective for failing to challenge the warrantless search and seizure of the cash from Clemons's pocket.[2] During the one-hour trial, Clemons did not develop the record about the circumstances of the search and seizure much beyond what was before us on direct appeal. He submitted as exhibits the transcript of his bench trial and the minutes of testimony, which included the officer's police report describing the events of the traffic stop that led to his arrest. Clemons also testified and called his appellate counsel. Neither party

---

[2] Clemons also argued that his trial counsel was ineffective for failing to object to one question Clemons was asked during his testimony and that his appellate counsel was ineffective for failing to make an argument on direct appeal. But he does not continue to pursue these claims on appeal.

called the officer—relying only on his testimony at the original bench trial and his report. Nor did either call Clemons's trial counsel.

The district court denied Clemons relief. The court found "that the officer was well within his right to perform a pat down of Clemons and had probable cause to arrest Clemons which would justify a warrantless search." And so, the court reasoned that a motion to suppress would not have been granted, and thus "Clemons did not meet his burden of proof . . . to show that the trial attorney failed to perform an essential duty by not filing a motion to suppress." Clemons now appeals.

II.

Criminal defendants are constitutionally entitled to assistance of counsel. *See* U.S. Const. amend. VI; Iowa Const. art. I, § 10. We give force to that constitutional demand by requiring counsel to provide *effective* assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). And criminal defendants who believe their defense counsel fell below that constitutional floor may petition for postconviction relief. *See* Iowa Code § 822.2(1)(a). To prove ineffective assistance of counsel, a defendant must show "both that counsel breached an essential duty and that constitutional prejudice resulted." *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024).

A defendant shows that counsel breached an essential duty by proving by a preponderance of the evidence that counsel "did not meet the standard of performance required of a reasonably competent practitioner." *Id.* (cleaned up). It is not enough to show "improvident trial strategy, miscalculated tactics or mistakes in judgment." *Id.* (cleaned up). Rather, we presume counsel performed

competently and will only intervene when errors are so severe they undermine the adversarial guarantee of the Sixth Amendment. *Id.* "Counsel, of course, does not provide ineffective assistance" by failing to raise a particular issue in the criminal proceeding if the issue "is meritless." *State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015); *see also State v. Carroll*, 767 N.W.2d 638, 645 (Iowa 2009) (reasoning that consideration of a claim that counsel was ineffective for failing to move to suppress required consideration of the motion's merits because "counsel has no duty to pursue a meritless issue"). We review the district court's denial of postconviction relief based on an ineffective-assistance-of-counsel claim de novo. *See Smith*, 7 N.W.3d at 725.

Clemons argues that his trial counsel breached an essential duty by failing to move to suppress the cash that was found and seized from his pocket without a warrant.[3] But on our de novo review, we agree with the district court that this claim fails because Clemons has not proved that he has a meritorious suppression issue. *See Halverson*, 857 N.W.2d at 635. The officer's conduct leading to the seizure of Clemons's cash did not violate the Fourth Amendment of the United States Constitution or article I, section 8 of the Iowa Constitution.[4]

Both the Fourth Amendment and article I, section 8 protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

---

[3] Because we resolve this appeal based on *Strickland*'s first prong, we do not consider whether Clemons could have shown constitutional prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

[4] Clemons does not advance any independent analysis under the Iowa Constitution, so we do not separately analyze the merits of his suppression issue. *See State v. Wilkes*, 756 N.W.2d 838, 841 n.1 (Iowa 2008).

unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Iowa Const. art. I, § 8. No doubt these protections apply to a search of Clemons's person, including his pocket, and the seizure of his cash. So we must decide whether the search and seizure were reasonable.

"Warrantless searches and seizures are per se unreasonable unless they fall under one of the recognized exceptions to the warrant requirement." *State v. Baker*, 925 N.W.2d 602, 610 (Iowa 2019). One of those recognized exceptions is a "pat down" search based on "reasonable suspicion that the person is armed and the officer's safety is in danger." *State v. Bergmann*, 633 N.W.2d 328, 332–33 (Iowa 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)); *see also State v. Price-Williams*, 973 N.W.2d 556, 562–63 (Iowa 2022). "We evaluate the existence of reasonable suspicion based on the totality of circumstances confronted by the officer." *Price-Williams*, 973 N.W.2d at 562 (cleaned up). We must decide whether "specific and articulable facts" and "rational inferences from those facts" would "reasonably warrant" the officer's search. *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (cleaned up). And we do so objectively, based on the facts known to the officer and are "not bound by his real reasons" or "the reasons stated by the investigating officer in justifying" the search or seizure. *Id.*

Here, the officer first found Clemons's cash by feeling it during a pat-down search. The officer conducted the pat-down after asking Clemons to step out of the car so that the officer could search the car. The officer had already found a large bag of marijuana in the driver's pants under circumstances where it seemed likely the bag had been elsewhere in the car when the officer first approached and then stuffed in the driver's pants to hide it while the officer was running the driver's

and Clemons's information in his squad car. And the officer knew that the driver said she was uncertain how much marijuana was in the bag. So it was reasonable for the officer to be suspicious that Clemons was involved in a drug transaction and might have a weapon on him. *See United States v. Crippen*, 627 F.3d 1056, 1063 (8th Cir. 2010) ("A suspicion on the part of police that a person is involved in a drug transaction supports a reasonable belief that the person may be armed and dangerous because weapons and violence are frequently associated with drug transactions."). And given "that traffic stops are especially fraught with danger to police officers," including the risk that "a passenger" may "employ violence to prevent apprehension" for "a more serious crime [that] might be uncovered during the stop," we have little difficulty holding that these facts and rational inferences reasonably warranted the officer's pat-down of Clemons. *Arizona v. Johnson*, 555 U.S. 323, 330–31 (2009) (cleaned up).

Arguing for a contrary conclusion, Clemons contends that the officer's search was more than a pat-down, pointing to the absence of any mention in the officer's report that he conducted a pat-down and "Clemons'[s] testimony at the PCR trial that the officer simply reached into his pocket rather than patting him down." But Clemons overlooks the officer's testimony at the criminal trial that during that "pat-down of [Clemons's] person," the officer "felt there was a large sum of cash on his person." True, the report does not provide that same clarity as to the type of search the officer conducted when asking Clemons to step out of the vehicle. But nothing in the report contradicts this testimony. And the report's assertion that the officer "did not remove the money from his pocket" at that time tracks with merely feeling the cash during a pat-down.

Neither does Clemons's testimony about the officer taking the cash from his pocket cause us to find the officer exceeded a pat-down search. For starters, it is not clear that Clemons was necessarily talking about the same initial pat-down search when he agreed with his counsel's leading question, "And did he reach in and pull it out?" The officer too testified that at some point, he "ended up pulling [the cash] out of [Clemons's] pocket and counting it in front of [the officer's] squad car camera." But from the officer's testimony and report—which Clemons's repeatedly urges us to rely on in finding the timeline of the officer's conduct—this removal of the cash happened later, after the officer had searched the car and talked again with the driver. And the questioning of Clemons at the PCR trial never explored the precise timeline of when the cash was taken from his pocket. Even if we assume that Clemons did mean that he was searched a single time, right after being asked to step out of the car and the officer reached in his pocket then, we find the officer's testimony and report more credible. The officer did not exceed a lawful pat-down search because he did not reach into Clemons's pocket until his later second search of Clemons's pocket.

To be sure, that eventual second search and the seizure of the cash from Clemons's pocket must also fall within a warrant exception. And it does—as a search incident to arrest.

If an officer has "probable cause that a person is committing a crime," the officer may arrest the person and "conduct a warrantless search incident to a lawful arrest." *State v. Stevens*, 970 N.W.2d 598, 604 (Iowa 2022). Under such a search, "an officer can (1) disarm the suspect to take him into custody, and (2) preserve evidence." *Id.* (citing *United States v. Robinson*, 414 U.S. 218, 234 (1973)). It

matters not whether the search happens before the "formal arrest," so long as the arrest "followed quickly on the heels of the challenged search," and the officer had probable cause just before the search  *State v. Horton*, 625 N.W.2d 362, 364 (Iowa 2001) (cleaned up); *see also State v. Peterson*, 515 N.W.2d 23, 25 (Iowa 1994) ("[A] search incident to an arrest need not be made *after* a formal arrest if it is substantially contemporaneous with it, provided probable cause for the arrest existed at the time of the search."); *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980).

Clemons argues this exception cannot apply because the officer lacked probable cause to arrest him at the time the officer took the cash from his pocket. Specifically, he challenges the district court's reliance on evidence that the officer discovered in the search of the car when finding probable cause because, according to Clemons, the officer searched and seized the cash before the search of the car.  But again, Clemons conflates two distinct searches.  True, the pat-down search occurred before the search of the car.  But as already discussed, the evidence shows that the officer felt—but did not remove—the cash at that time. The search of the pocket in which the officer took the cash from Clemons's pocket happened after the search of the car and the officer's further interview with the driver.  The evidence discovered in the search and learned in the interview is thus properly considered in deciding whether the officer had probable cause to arrest Clemons.

Clemons does not argue that the officer lacked probable cause if we do consider the evidence from the search of the car and the driver's interview.  And we agree with the district court's analysis that probable cause existed.  *See*

*Stevens*, 970 N.W.2d at 604 ("[T]he inquiry for probable cause to *arrest* is whether the facts and circumstances within a law enforcement officer's knowledge are sufficient to warrant a prudent police officer in believing that the suspects had committed or were committing an offense." (cleaned up)). The officer found a large amount of fresh marijuana hidden in the driver's pants under circumstances suggesting it had been hidden in the midst of the traffic stop. Marijuana packaging materials were found in the passenger side door and the back-seat pocket that were both easily accessible to Clemons in his reclined passenger seat. So too was an electronic scale with marijuana residue on it—which Clemons told the officer was his—found in the back-seat pocket. And the driver's answers to the officer's questions reasonably led the officer to believe that the marijuana was not hers. So the officer was justified in arresting Clemons for possessing marijuana or conspiring to possess marijuana with the intent to deliver and searching him incident to that arrest shortly before making the formal arrest. *See Horton*, 625 N.W.2d at 364–67.

Because the officer's actions patting down Clemons and then later seizing his cash incident to his arrest did not violate the Fourth Amendment or article I, section 8, we agree with the district court that Clemons did not prove that his trial counsel failed to perform an essential duty. We thus affirm the district court's denial of postconviction relief.

**AFFIRMED**.